---

(No. 12584.—Decision set aside.)
THE CONGREGATIONAL SUNDAY SCHOOL AND PUBLISHING SOCIETY, Appellant, *vs.* BOARD OF REVIEW, Appellee.

*Opinion filed October 27, 1919—Rehearing denied Dec. 4, 1919.*

1. CORPORATIONS—*rights and privileges of foreign corporation.* A foreign corporation legally doing business in Illinois has all the rights and privileges of a similar domestic corporation.

2. CHARITIES—*charity, in law, is not confined to the relief of poverty.* Charity, in the legal sense, is not confined to the relief of poverty and distress but has a wider signification, and embraces the improvement and promotes the welfare of man.

3. SAME—*what are the distinctive features of a charitable organization.* The principal and distinctive features of a charitable organization are that it has no capital stock and makes no provision for dividends or profits but derives its funds mainly from public and private charity and holds them in trust for the charitable purposes expressed in its charter.

4. SAME—*an institution may be charitable although it charges those who are able to pay for its benefits.* An institution does not lose its charitable character by reason of the fact that those recipients of its benefits who are able to pay are required to do so, where no profit is made by the institution and the amounts so received are applied in furthering its charitable purposes and its benefits are refused to none on account of inability to pay therefor.

5. TAXES—*when a religious publishing society is exempt from personal property tax.* A religious publishing society which is engaged in the publication and circulation of moral books and religious tracts and books for use in Sunday schools and sells the same to any who wish to buy them is exempt from a personal property tax on such books and supplies, where the primary purpose of the business is that of religious instruction and where the profits from the business are used for that purpose.

6. SAME—*exemption statutes will be strictly construed—charities.* Whether property is exempt from taxation must be determined by statutory provisions, and those provisions will be strictly construed against the exemption and in favor of the State; but as charities relieve the burdens of government and are favored in the law, a charitable institution will be exempt from taxation if it comes fairly within the terms of the exemption provisions.

DUNN, C. J., dissenting.

AUDITOR'S certificate of appeal to review the decision of the Board of Review of Cook county.

JONES, ADDINGTON, AMES & SEIBOLD, (WALTER HAMILTON, of counsel,) for appellant.

EDWARD J. BRUNDAGE, Attorney General, and CLARENCE N. BOORD, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is an appeal by the Congregational Sunday School and Publishing Society from a decision of the board of review of Cook county denying its personal property exemption from taxation. This property consisted of religious and moral books and Sunday school supplies kept in its store at 19 West Jackson boulevard, Chicago. Its property was assessed at $20,000. The Auditor of Public Accounts has certified the record to this court for review.

Appellant was formed by the consolidation of two private corporations and is organized under certain special acts of the State of Massachusetts. Its main office is located in Boston, and the Chicago office is a branch established for handling its business in that territory west of the State of Ohio. The corporate purposes of appellant, as authorized by the statutes of the State of Massachusetts, are to establish and aid Sunday schools, supply Sunday school libraries and otherwise promote Sunday school education; to produce, publish, sell and circulate moral and religious tracts

and books; and to publish, purchase, sell, circulate and distribute, in such manner as it deems advisable, any and all publications, books, tracts, papers or periodicals calculated to promote good morals, pure christianity, the spread and extension of the gospel of Jesus Christ, and to take, hold and disburse any and all charitable funds contributed to it for the purposes aforesaid. The charter of the Congregational Sabbath School and Publishing Society, one of the corporations merged in appellant, provided that nothing in the act creating it was to be construed to authorize the corporation to traffic in books for the purpose of profit.

Section 46 of our Corporation act (Hurd's Stat. 1917, p. 707,) authorizes religious corporations to publish, print, circulate, sell or give away such religious, Sabbath school and missionary tracts, periodicals or books as they may deem necessary to the promotion of religion and morality. We have held that a foreign corporation legally doing business in this State has all the rights and privileges that a similar domestic corporation has. *Eaton* v. *Home Missionary Society,* 264 Ill. 88.

It is conceded that the business of appellant is four-fold : It maintains a Sunday school missionary department, which organizes Sunday schools and maintains missionaries who visit and assist in the work of these schools; it publishes and circulates a religious paper known as *The Congregationalist and Advance* and four other smaller religious periodicals; it publishes and sells religious and moral books; and it composes and publishes Sunday school periodicals, quarterlies and lesson-helps, and sells these supplies to Sunday schools of all denominations. Appellant employs authors of note to write its books, and, so far as the record shows, it sells at its Chicago office only such books as it writes and publishes. The aim of the corporation is to publish and distribute these books for the purpose of disseminating the views of its writers on religion and morality. A sufficient charge is made to cover the expenses of this work. All

the printing and publishing is done in Boston. The Chicago branch is used as western headquarters for the work of the society, and it maintains a store, where its religious and moral books and Sunday school supplies are sold to whomsoever desires to buy. The funds of appellant are raised by donations from Congregational churches, Sunday schools, Christian Endeavor societies, women's home missionary organizations and individuals, and by incomes from certain legacies, trust funds and investments. All of these funds are handled in Boston, and none of the property of appellant, except the books and Sunday school supplies, is kept in Chicago. All of the income of appellant is devoted to the corporate purposes heretofore outlined. No stock is issued, no dividends are declared and no profit accrues to any individual. Appellant contends that these corporate purposes and acts are clearly religious, beneficent and charitable, and that its property is therefore exempt from taxation.

The only tabulated statement of receipts and disbursements and of assets and liabilities that appears in the record is one for the year 1908-1909. That year its business showed a profit to the Chicago office of $8440.28. It appears that some years the business is operated at a profit and some years it is operated at a loss. Appellant's business at Chicago for the year 1917 amounted to approximately $200,000, of which $140,000 was from the sale of Sunday school supplies and $60,000 from the sale of religious and moral books. It is, of course, impossible to determine just what the expenses will be each year, but it appears that the prices charged are such that in carrying the business over a period of years there will be practically no profits. When a Sunday school is in such financial condition that it is unable to purchase its supplies the society will furnish the supplies gratis. If the missionaries find a Sunday school in need of these supplies which is able to pay only a portion of the list price, then it is furnished with these sup-

plies at a cost of seventy-five, fifty or twenty-five per cent of the price, in accordance with its ability to pay. Such profits as do come from the business of selling books and periodicals are devoted to the maintenance of the missionary department.

In determining whether appellant is entitled to have its claim for exemption granted it will be necessary to consider the revenue laws of this State. All property in this State is subject to taxation unless it is exempted. Section 3 of article 9 of the constitution does not exempt from taxation such property as may be used exclusively for school, religious or charitable purposes, but merely provides that the General Assembly may by general law exempt from taxation the property of such institutions. Section 2 of the Revenue act provides that "all property used exclusively for religious purposes, or used exclusively for school and religious purposes, * * * and not leased or otherwise used with a view to profit," and "all property of institutions of public charity, all property of beneficent and charitable organizations, whether incorporated in this or in any other State of the United States, * * * when such property is actually and exclusively used for such charitable or beneficent purposes and not leased or otherwise used with a view to profit," shall be exempt from taxation. This society claims exemption under both of these clauses, and, so far as this particular case is concerned, they are so closely associated that we will discuss them together.

Before proceeding further it is well to determine what is meant by the term "beneficent and charitable organizations." The definition of a charity which we adopted in *Crerar* v. *Williams*, 145 Ill. 625, first laid down by Mr. Justice Gray in *Jackson* v. *Phillips*, 14 Allen, 539, is: "A charity, in a legal sense, may be more fully defined as a gift, to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds and hearts under the influence of education or

religion, * * * by assisting them to establish themselves in life * * * or by otherwise lessening the burdens of government." This definition was approved in *Hoeffer* v. *Clogan,* 171 Ill. 462, *In re Estate of Graves,* 242 id. 23, and *Skinner* v. *Northern Trust Co.* 288 id. 229. The editors of the American and English Encyclopedia of Law (5 Am. & Eng. Ency. of Law,—2d ed.—894,) and of Corpus Juris (11 Corpus Juris, 299,) have accepted this definition as comprehensive and satisfactory.

Charity, in the legal sense, is not confined to mere almsgiving or the relief of poverty and distress, but has a wider signification, which embraces the improvement and promotion of the happiness of man. A charity is a gift to the general public use which extends to the rich as well as to the poor. The test of a charity and the test of a charitable organization are in law the same. The principal and distinctive features of a charitable organization are, that it has no capital stock and no provision for making dividends or profits but derives its funds mainly from public and private charity and holds them in trust for the objects and purposes expressed in its charter. In other words, the test whether an enterprise is charitable is whether it exists to carry out a purpose recognized in law as charitable, or whether it is maintained for gain, profit or private advantage. An institution does not lose its charitable character, and consequent exemption from taxation, by reason of the fact that those recipients of its benefits who are able to pay are required to do so, where no profit is made by the institution and the amounts so received are applied in furthering its charitable purposes and those benefits are refused to none on account of inability to pay therefor. The fundamental ground upon which all exemptions in favor of charitable institutions are based is the benefit conferred upon the public by them, and a consequent relief, to some extent, of the burden upon the State to care for and advance the interests of its citizens.

280—8

The main case relied upon by appellee as tending to hold that appellant is not a charity, and therefore not entitled to exemption from taxation, is *American Sunday School Union* v. *City of Philadelphia,* 161 Pa. St. 307. The purpose of the union was the erection and maintenance of Sunday schools and the publication and circulation of moral and religious periodicals and books. It had no capital stock and paid no dividends. It owned and occupied a building where books published not only by itself but also by other concerns were sold. Standard works, such as Webster's Dictionary, were included in the books sold by the union. The court held that while the union was a benevolent and charitable institution, still the building occupied by it was liable to taxation. The court said: "Conceding the fact that the society is an 'institution of purely public charity,' and, as such, exempt from taxation, it seems to us such an institution may, as an aid to the accomplishment of its primary object, carry on a business or use part of its property for a business purpose which renders such business or such part of its property taxable. The first floor of the society's Chestnut street building was used for purely business purposes, and its business was conducted in that location for the avowed purpose of profit. * * * While they confine their trade to 'publications of a high moral character and such standard works as Webster's Dictionary and like works,' this in no way negatives the business character of the enterprise. * * * Nor does the fact that the profits gathered on the counter of the book store are devoted to the primary object of the charity, which is purely public, in any degree affect the character of the trading or commercial enterprise. Every dollar the society expends is some charitable contributor's gains or profits from some business not charitable. If such contributor devoted the whole of his profits from the sale of dry goods, groceries or books to promote this particular charity, that fact would not make the source of such profit a purely public charity;

and if, as the master has found, the society was compelled to put a part of its operations on a basis that was self-supporting by starting a book store to sell books only of a high moral character and standard publications, that is trade. That the entire profits of this branch of the business are devoted to the purposes of the charity no more changes its business nature than if, instead of a book store, the society had established and carried on a shoe store."

In *Alton Bay Camp-Meeting Ass'n* v. *Town of Alton,* 69 N. H. 311, the charter of the association provided that its real and personal property, within certain limits, used for religious, moral, charitable and benevolent purposes, should be exempt from taxation. Among its affairs it conducted a grocery store, with a stock valued at about $500, which it claimed to be exempt from taxation, but the court there held that the purposes of a religious institution were not advanced directly by operating the grocery store and therefore it was subject to taxation.

In *Sisters of Peace* v. *Westervelt,* 64 N. J. L. 510, exemption from taxation was claimed on a tract of land upon which a chapel and a three-story frame building used for a summer boarding house had been erected. The annual income from the boarding house amounted to over $5000, which money was afterwards used for charitable purposes. The court there held that the chapel and ground upon which it stood were exempt but that the operation of the boarding house did not directly further the purposes for which the society was organized, and therefore the building and tract were not exempt. The court said: "The fact that the profits of a commercial enterprise are either in whole or in part devoted to charity certainly does not operate to render the business itself a charity; nor is the property in which it is carried on, by reason of such appropriations of profits, used for charitable purposes."

In *Fitterer* v. *Crawford,* 157 Mo. 51, a Masonic lodge which owned a building of which the first and second floors

were rented and the third floor was used as a lodge room, asked that the building be exempt from taxation on the ground that the rents so received were used for the benevolent purposes of the lodge and that these floors were not rented for profit. The court there held that the use of the rents so received for the purposes of the lodge did not constitute using the building exclusively for purely charitable purposes, within the meaning of the statute. To the same effect are the holdings in the following cases cited by appellee: *Stahl* v. *Kansas Educational Ass'n,* 54 Kan. 542; *City of New Orleans* v. *St. Patrick's Hall Ass'n,* 28 La. Ann. 512; *Ridgely Lodge* v. *Redus,* 78 Miss. 352; *Parker* v. *Quinn,* 23 Utah, 332; *Trustees of the Academy of Richmond County* v. *Bohler,* 80 Ga. 159; *Young Men's Christian Ass'n* v. *Douglas County,* 60 Neb. 642.

We are also referred by appellee to two decisions of this court. In *Monticello Seminary* v. *Board of Review,* 249 Ill. 481, we held that interest from bonds and notes owned by educational institutions were not exempt, even should such interest be used for the maintenance of the school. We there held that the property itself must be directly used for school purposes before it is entitled to be exempted. In *First Methodist Episcopal Church* v. *City of Chicago,* 26 Ill. 482, the church owned a building in Chicago, the third floor of which it used for church purposes but the first and second floors were rented for commercial purposes. The rents so received were used for paying off the indebtedness of the church. The purpose of the church to promote religion and morality was not advanced directly by leasing a portion of its building for profit, and so we held that the part of the building rented for commercial purposes was liable to taxation.

The only case cited by appellee directly in point is *American Sunday School Union* v. *City of Philadelphia, supra.* This is a Pennsylvania case, and the constitution of Pennsylvania limits exemption from taxation to "institutions of

purely public charity." Our constitution does not so limit the power of our legislature in granting exemptions. In addition to selling its own publications the union also sold such secular books as Webster's Dictionary. These points sufficiently distinguish the Pennsylvania case, so that it can not be said to be exactly in point with the case under consideration. In all the other cases above referred to, money was realized by the religious or charitable institutions from purely commercial sources. In none of the cases was any object of the religious or charitable institution promoted by the act done for which the money was received. It must therefore be determined whether the primary purpose of the retail book business of the appellant is charitable, or whether the primary purpose is the making of a profit and the secondary purpose is the devoting of these profits to charitable purposes. *First Congregational Church* v. *Board of Review,* 254 Ill. 220.

It seems clear from the statement of facts certified to this court that the dominant object of appellant is to spread the gospel of Jesus Christ by the spoken and written word, and under this object this is directly promoted by the distribution of its religious and moral books and Sunday school supplies. It follows, therefore, that the object of selling books and supplies is not to make money but is to promote the religious, charitable and beneficent purposes of appellant by disseminating the teachings of its books and periodicals. The purpose of the society is accomplished by the effect on the minds and lives of the children and adults who read and study its books and periodicals. The work of appellant is to send its workers and missionaries into those parts of our land where religious teaching among the young has been neglected, and there to take the young into Sunday schools for moral and religious instruction and provide for them wholesome literature. Many of these books are suitable for the use of adults, and the society seeks to supply needs of individuals and families by gift where that is

necessary, but by a sale whenever a sale is practicable. The price received, whatever it may be, makes a gift to needy persons possible to the amount so received beyond what the society could otherwise give. It is not the use to be made of the profits but the nature of the business done that is to be considered in deciding the question of liability to taxation. We have already pointed out the purposes for which this society was organized and the four-fold nature of its business. Sales of publications made by this society, whether at a profit, at actual cost or half cost, are in aid of the gratuitous distribution of the same publications among those who are unable to buy them.

In support of its claim for exemption appellant directs our attention to a number of cases of this and other States. In *Maine Baptist Missionary Convention* v. *City of Portland,* 65 Me. 92, the corporate purposes of the convention were the promulgation and diffusion of christian knowledge and intelligence through its agency as an institution of domestic missions. It was held that since missionary societies have been repeatedly held to be charitable institutions, the Baptist Missionary Convention came within that class and its property was therefore exempt from taxation.

In *Commonwealth* v. *Young Men's Christian Ass'n,* 116 Ky. 711, the corporate purpose of the association was to seek out young men, endeavor to bring them under moral and religious influences, secure their attendance at some place of worship, introduce them to members and privileges of the association, secure them proper boarding places and employment and to surround them with christian influences. The court, in holding that the association came within the constitutional term of a purely public charity, said: "Aside from that part of the religious work done by the appellees which may be denominated devotional, they undertake to bring within the religious, moral and intellectual influences of the institution all young men,—and, for that matter, old men too,—for their betterment, improvement and protection

from evil influences and consequences. It is not so much the giving of alms or in aid of the mendicant; the endeavor is to reach the boys and young men before they need alms and before they are reduced to beggary, and by training their minds and teaching them how to use and preserve their bodies and how to live useful and honest lives, to save them from the lower grades of misfortune so familiar in the utter helplessness of abject poverty and disease and want. This is accomplished by the institutions keeping open attractive quarters, where libraries of useful books, current magazines and newspapers, innocent games of amusement, a gymnasium for the exercise and development of the body, and night schools affording additional opportunities to such as have not had sufficient advantages and education, are all accessible to whomsoever will avail himself of them, without regard to creed or nationality. Lists of decent boarding houses are kept, to which strangers are directed. Proper acquaintances and associations are formed and useful and moral instruction imparted. In other words, they help the helpless, would keep the innocent innocent, and endeavor by placing clean ideals and experiences before the youth to have them adopt them in their lives. They aid the uneducated to a limited but practical education. This is all done 'for the love of God and for the love of our neighbor in the catholic and universal sense, free from the stain of anything that is personal, private or selfish.' "

In *Davis* v. *Cincinnati Camp-Meeting Ass'n,* 57 Ohio St. 257, it was held that the association was an institution of purely public charity, and that the lands used by it for the purpose of camp meetings were not used with a view to profit, although charges were made for the privileges of keeping public stables and of keeping boarding and rooming houses on the grounds for the accommodation of persons attending the meetings.

In *Methodist Episcopal Church* v. *Hinton,* 92 Tenn. 188, it was held that the publishing department of the

Methodist Episcopal Church South was an institution of purely religious and charitable purposes and as such was exempt from taxation. The corporation was organized for the manufacture and distribution of books, tracts, periodicals and other publications, and the act provided that the corporation should be under the discipline of the Methodist Episcopal Church South, according to its laws and usages. The discipline of the church provided that the purpose of the institution was to advance the cause of christianity by disseminating religious knowledge and useful literature and scientific information in the form of books, tracts and periodicals. It further provided that any surplus remaining after the sale of these publications was to be used for the benefit of traveling, supernumerary, superannuated and worn-out preachers, their wives, widows and children. Its annual business amounted to $336,800, about 1/156 part of which was derived from the printing of secular books. All the proceeds were applied to the purposes named. The court held that the dissemination of the gospel and the advancement of christianity were charitable purposes.

In *Commonwealth* v. *Lynch,* 115 Va. 745, a young men's christian association was held to be exempt from taxation, regardless of the fact that it charged for billiards, for bowling, for rooms and for annual dues, the court saying: "If the dominant purpose and use made of these rooms is to obtain revenue or profit, although it is to be applied to the general objects of the association, it would render the property liable to taxation; but if the use made is that· for which the association was incorporated and tends immediately and directly to promote its purposes, then its use is within the provisions exempting the property from taxation, although revenue or profit is derived therefrom as incident to such cases. * * * Manifestly, a member of the association who was a lodger or inmate of the building would be in a better situation to take advantage of the privileges offered by the association and more likely to take advan-

tage of them, other things being equal, than a member who lodged elsewhere."

In *Franklin Square House* v. *Boston,* 118 Mass. 409, the court held that the property of the corporation, which was organized to provide a home for working girls at a moderate cost, was exempt from taxation on the ground that it was a public charity, even though the girls paid for their keep, the corporation having no capital stock and there being no profits divided among its members.

In *Contributors to Pennsylvania Hospital* v. *Delaware County,* 169 Pa. St. 305, it was held that farms purchased and permanently used by a hospital for hospital purposes, as part of the hospital plant and as an open air sanitarium, and incidentally for profit to reduce expenses, are exempt from taxation. The court there distinguished *American Sunday School Union* v. *City of Philadelphia, supra,* saying: "But property which is used directly for the purposes and in the operation of the charity is exempt, though it may also be used in a manner to yield some return and thereby reduce the expenses."

In *Grand Lodge* v. *Board of Review,* 281 Ill. 480, we held that the Masonic Home for the care and support of dependent Masons and their families was a charitable institution and that the land used for its maintenance was devoted to a charity, and we further held that the fact that the benefits are restricted to Master Masons, their widows and orphans, does not deprive the institution of the character of a public charity. We also held that a large farm operated by the grand lodge to raise produce for the support of the inmates of the home was exempt from taxation as the property of a public charity, when the profits from the farm were used as a part of the charity fund for the maintenance of the home. We there said: "The primary use to which property is put is to be considered in determining whether it falls within the terms of the exemption. The primary purpose and use of the lands in

question being the maintenance of the home and the whole net income being devoted to that use, they come within the statutory definition of lands actually and exclusively used for charitable or beneficent purposes and not leased or otherwise used with a view to profit."

In *City of Chicago* v. *University of Chicago,* 228 Ill. 605, we held that the dormitories and dining halls of the university were not used with a view to profit, even though the students paid fees for lodging and board, and that therefore the property was exempt from a water tax.

In *Monticello Female Seminary* v. *People,* 106 Ill. 398, a tract of land used by the seminary for promenade grounds, gardens, orchards, pastures and crop lands, when all the returns from the lands were used to supply the institution, was held exempt from taxation under our statute.

In *Sisters of St. Francis* v. *Board of Review,* 231 Ill. 317, we held that the St. Francis Hospital was an institution of public charity where persons who are without money or property are cared for without charge, and that it did not lose its right to exemption from taxation by reason of the fact that the patients received by it who are able to pay are required to do so, or by reason of the fact that it receives contributions from outside sources, so long as all the money received by it is devoted to the general purposes of charity and no portion of the money received by it is permitted to inure to the benefit of any private individual engaged in managing the charity. We further held it was no objection because far the greater number of patients paid for the care and attention they received at the institution. So long as charity was dispensed to all those who needed and who applied for it, and so long as no private gain or profit came to any person connected with the institution, and so long as it did not appear that any obstacle of any character was by the corporation placed in the way of those who might need charity of the kind

dispensed by the institution, the institution was a charitable and beneficent organization.

We recognize the rule adopted by this court that statutes. for the exemption of property from taxation are to be strictly construed against the exemption and in favor of the State and taxation. (*First Congregational Church v. Board of Review, supra; Northwestern University* v. *Hanberg,* 237 Ill. 185; *In re Walker,* 200 id. 566.) On the other hand, charities have always been favored in the law because they relieve the burdens of government, and if appellant fairly comes within the terms of the exemption clauses of our Revenue act we feel inclined to grant the exemption. It seems clear that the predominant object of appellant in the use of its stock of books and Sunday school supplies in Chicago is to spread the gospel and to elevate humanity by means of written words embodied in its religious and moral books and in its Sunday school lesson-helps. The only means by which it can spread this gospel in printed form is by distribution of its books and Sunday school supplies. The purposes of appellant are directly carried out by the distribution of its books and supplies, and the receipt of the money from sales is incidental and secondary. It is not the profits from the sale of the books that accomplish the purposes of appellant, but it is the distribution of the books, periodicals and lesson-helps,—and therefore the use of the property sought to be taxed,—that directly accomplishes appellant's religious, charitable and beneficent purposes.

The application of the appellant for exemption from taxation of the property in question should have been granted, and therefore the decision of the board of review of Cook county is set aside.           *Decision set aside.*

Mr. CHIEF JUSTICE DUNN, dissenting.