Arch Myers, Appellee, v. Young Men's Christian Association of Quincy, Illinois, Appellant.

Gen. No. 9,342.

178

October term, 1942. Heard in this court at the Opinion filed October 29, 1942.

LANCASTER & NICHOLS, of Quincy, for appellant.

HENRY W. POLLOCK, of Quincy, for appellee.

MR. PRESIDING JUSTICE RIESS delivered the opinion of the court.

An action at law in tort was filed in the circuit court of Adams county by Arch Myers, plaintiff appellee

herein, against the defendant appellant, Young Men's Christian Association of Quincy, Illinois, a corporation, seeking recovery of damages alleged to have been sustained by plaintiff while exercising due care for his own safety, as a proximate result of the collapse of a tier or row of bleachers negligently maintained by the defendant in a defective and dangerous condition at its soft ball park, during the progress of a night ball game sponsored by the defendant, to which park the plaintiff had paid an admission fee as a spectator. Trial by jury resulted in a verdict of $1,750 in favor of the plaintiff, after denial of defendant's motions for a directed verdict. Subsequent motions for judgment notwithstanding the verdict, for a new trial and in arrest of judgment were also denied and judgment was entered on the verdict against the defendant on December 15, 1941, from which judgment the defendant has perfected its appeal to this court.

- Defendant appellant, by its answer admitted that plaintiff was a spectator and was injured at a soft ball game in progress on the night of August 13, 1941, in a soft ball park operated by defendant in Quincy, but denied that it negligently and carelessly maintained defective or dangerous bleachers, or that the same collapsed and injured plaintiff as a result of negligent maintenance by the defendant as alleged or that plaintiff exercised due care and caution for his own safety. Defendant further admits and avers that it is known as and is a charitable association and corporation but denies that it was operating its soft ball park for profit, or that a profit was obtained therefrom, and states that it is a duly chartered Illinois corporation not for pecuniary profit; that the amount fixed for admission was a nominal charge designed to cover the expense of operating the ball park; that the object and purpose of operating said park was to carry out the corporate objects and purposes of the defendant in providing wholesome recreation for young men en-

gaged in industries; that said object and purpose as stated in its articles of incorporation is "the spiritual, intellectual, social and physical welfare of young men"; that the defendant has no stock or stockholders; that none of the income of the defendant inures to the benefit of any person; that it is supported largely by gifts and donations made through Community Chest of Quincy, Inc.; that any income received by the defendant from the operation of the park was devoted solely toward the expense of carrying out of such corporate objects and purposes. No reply was filed to the answer.

The second count of the complaint alleged that defendant carried Public Liability Insurance to protect it from any loss which might occur, or any liability which might accrue, should it become liable through its negligence for injuring any individual in and about its ball park, which latter count was stricken from the complaint by the court upon defendant's motion therefor. To this ruling, plaintiff appellee has excepted and assigned cross error on appeal.

Defendant appellant, as grounds for reversal, alleged prejudicial error in overruling the various motions interposed by the defendant; in holding that the doctrine of *res ipsa loquitur* applies herein; in sustaining plaintiff's objections to the introduction of defendant's charter setting forth its corporate powers, objects and purposes as a charitable corporation, and in entering judgment for the plaintiff.

The facts, briefly stated are as follows: plaintiff appellee Myers, a machinist employed in an industrial plant at Quincy, accompanied by his wife and two friends went to the soft ball park operated by defendant appellant on Wednesday evening, August 13, 1941, where he had frequently attended games during that and previous summers. They purchased tickets for which a twenty-five cent admission fee to the ball park was paid and sat together on the third row from the

top of a ten seat tier of open bleachers, where plaintiff usually sat. After about two hours, the section of bleachers in which plaintiff was sitting leaned over toward the north and collapsed. When the bleachers started to go down, plaintiff turned and sought to arise. His right foot was caught in the bleachers, resulting in injuries to his right ankle and the calf of his left leg. Prior thereto, no section of the bleachers, which were open to view to all persons had collapsed or caused any accident or injury. The bleachers had been moved to and used at another place on the preceding Sunday by the Knights of Columbus and had been returned and set up in the Y. M. C. A. park on Tuesday; on Tuesday night preceding the accident on Wednesday, they had been filled to capacity. No proof was offered by the plaintiff as to any specific defect or faulty construction of the bleachers occupied by plaintiff, who contended that the doctrine of *res ipsa loquitur* applied.

Witness Heald, defendant's general secretary, testified that he saw the bleachers frequently and there was nothing wrong with this section to his knowledge. That "The price of admission charged for that park has not been sufficient to provide any profit to the Young Men's Christian Association."

Witness Harry Hall, program secretary and physical director of the Y. M. C. A. testified that no boards were broken; that he had charge of the soft ball program and as far as he knew nothing was wrong with this section of bleachers, which had been in regular use without any previous accident occurring. Secretary Hall further testified that the soft ball park was conducted as part of the association's program under the terms of its charter to furnish wholesome recreation in the afternoon for boys and in the evening hours for young men employed in industries; that there was not room where the Y. M. C. A. building, gymnasium, swimming pool, billiard tables, pulley weights and

physical equipment is located downtown, for a soft ball park for use in connection with such activities of the Y. M. C. A.; that this enterprise was connected with the corporate objects and purposes of the association as a charitable corporation and not for pecuniary profit; that the Young Men's Christian Association is a charitable corporation, having no stock or stockholders, and no person receives any profit from its operation; that the income is derived solely from membership dues, temporary rentals, the community chest and its commercial features.

At the close of the plaintiff's evidence, the cause was dismissed as to codefendant George Durst for want of proof of plaintiff's allegations that he had carelessly and negligently rented defective bleachers to defendant Y. M. C. A. and had permitted use thereof at the time of plaintiff's alleged injuries. No appeal was taken from that order.

In passing upon the contentions of the appellant, which are assigned as prejudicial and reversible errors on the part of the trial court, we are first confronted with the contention that the defendant association is a charitable corporation and therefore, under recognized principles of law heretofore uniformly applied by the courts of review of this State, is not liable to respond in damages for the torts of its agents or servants, while acting in the furtherance of the purposes and objects of such association as defined in its corporate charter. While this principle of law has not been applied or adhered to in all States and has been applied with certain restrictions and limitations in some other jurisdictions, it has been uniformly recognized and applied by the courts of review of this State.

In the case of *Parks v. Northwestern University*, 218 Ill. 381, 75 N. E. 991, an action at law in tort was filed against said university corporation seeking recovery of damages by a student who had lost an eye through

injuries proximately caused by the negligence of one of the professors employed by the defendant. The defendant denied liability for the negligence or tortious act of its employee on the ground that it was a non-profit charitable corporation and institution, and therefore could not be held to respond in damages for any such alleged negligent injuries. Upon this issue, the above principle was directly applied by the Supreme Court, which stated the applicable and controlling principle (page 385) in the following language: ''That the appellee, though a private and not a public corporation, being a purely charitable institution, is not answerable for the negligent acts of its employees is held but with little diversity of opinion.'' In relation to its corporate purposes, it was there likewise said (page 383): ''It is clear from the reading of this Charter that the appellee's entire funds, whether from tuition fees received from students or other sources, must be used solely for educational purposes. The appellee corporation has no capital stock, it cannot declare dividends or share profits, and everything that it has is held in trust to be applied in such manner as to best accomplish the purpose for which it was created, viz; the diffusion of knowledge and learning.'' The reason and basis for such principle, long recognized in the law of this country and of England, was further discussed and set forth in that opinion.

In the case of *Hogan v. Chicago Lying-In Hospital & Dispensary,* 335 Ill. 42, 166 N. E. 461, wherein suit and action sounding in tort had been filed to recover damages for injuries sustained by a paying patient in the hospital, the defense was that the hospital, a corporation, was established and conducted for charitable purposes and not pecuniary profit, without capital stock or payment of dividends, and our Supreme Court therein again recognized and applied the above principle and cited with approval the case of *Parks v. Northwestern University, supra,* denying

plaintiff's right of recovery under such facts and circumstances and holding the rule announced in the *Parks* case, *supra*, to be "In accord with the great weight of authority in the United States." Similarly, in the case of *Maretick v. South Chicago Community Hospital*, 297 Ill. App. 488, 17 N. E. (2d) 1012, wherein a suit was brought against the hospital corporation for alleged negligent injuries sustained by a paying patient, the above principle was held to be applicable and controlling, and the court at page 491, used the following language: "We think it is conceded that if the defendant in this case is a charitable organization, as so defined in the law, that it is not liable for an action in tort for the negligence of its servants and employees." We find no authority of the courts of review in Illinois in conflict with the above well established principle of law.

A discussion of numerous cases distinguishing between institutions operated for charity and those operated for profit which render them either exempt from or liable to taxation is found in the case of *Congregational Sunday School & Publishing Society v. Board of Review*, 290 Ill. 108, 125 N. E. 7. It was there held concerning the publication, sale and distribution of its books and supplies to the public, that the primary purpose was not for the object of making money but to promote the religious, charitable and beneficent purposes of society, and that the receipt of the money from sales to other persons is incidental and secondary to such charitable purposes; that (p. 117) "It must therefore be determined whether the primary purpose of the retail book business of the appellant is charitable or whether the primary purpose is the making of a profit and the secondary purpose is the devoting of these profits to charitable purposes." At page 123 it is concluded that "The purposes of appellant are directly carried out by the distribution of its

books and supplies, and the receipt of the money from sales is incidental and secondary."

In the case of *School of Domestic Arts & Science v. Carr*, 322 Ill. 562, 153 N. E. 669, it was held that the personal property used exclusively in the carrying on of a school for the teaching of domestic arts and science to all young women who may apply for such instruction, without any charge except to those who may be able to pay, is exempt from taxation as being devoted to a charitable use under the seventh paragraph of section 2 of the Revenue Act; that the personal property in a restaurant used in connection with said school is exempt where no profit is made by anyone connected with the school, all the income from the restaurant and from tuition of those who pay the same being expended in the upkeep of the school; that a charity, in a legal sense, is not confined to mere almsgiving or the relief of poverty and distress but has a wider significance embracing the improvement and promotion of the happiness of man; that a charitable use, where neither law nor public policy forbids, may be applied to almost any purpose which tends to promote the well-doing and well-being of social man.

The above principles are again fully set forth with approval and applied to the facts in the case of *People v. Young Men's Christian Ass'n of Chicago*, 365 Ill. 118, 6 N. E. (2d) 166. The question was there raised as to whether or not the maintenance and operation of a hotel with incidental benefits and services furnished to its patrons by the Young Men's Christian Association of Chicago at certain fixed rates and charges, was ultra vires its corporate powers and charter, and it was held that since it appeared that the profits derived therefrom were used in furtherance of its corporate purposes, the personal property of the hotel, including its restaurant, cafeteria, laundry and haberdashery incidental to the furnishing of hotel rooms,

were exempt from taxation as being operated within and devoted to the charitable purposes and objects of said association. The court held that the primary object of the corporation was charitable and not for the purpose of making a profit; that the object of operating the hotel was the furnishing of wholesome living conditions to young men at a price that they could afford to pay and that the above incidental services furnished to and paid for by its patrons were furnished for the comfort of the lodgers who were not required to be members of the Y. M. C. A., in furtherance of its primary object as a charitable organization and not for profit. That (p. 123) ''Upon the state of facts shown by the record it is clear that appellee is a charitable organization engaged in charitable work. Its primary object is charity—not the making of a profit.''

It follows that an institution does not lose its charitable character by reason of the fact that recipients of its benefits who are able to pay are required to do so when no profit is made by the institution and the amounts so received are applied solely in furtherance of the charitable purposes and objects set forth in its articles of incorporation and corporate charter. *People v. Y. M. C. A. of Chicago, supra; Congregational Sunday School & Publishing Society v. Board of Review, supra.*

That the defendant appellant, Young Men's Christian Association of Quincy, was duly organized and chartered as a charitable corporation is not denied in the pleadings. The corporate charter of the defendant was offered in evidence and should have been admitted at the trial in support of the allegations of defendant's answer as the primary and best evidence of its corporate powers, purposes and objects as alleged and set forth in the pleadings. However, oral proof was admitted by the court that the defendant was a charitable organization as affirmatively alleged in the complaint,

and admitted in the defendant's answer, and expressly conceded in plaintiff's brief and argument. It is aptly said in the case of *Maretick v. South Chicago Community Hospital, supra* (p. 493) "As was said in *Turnverein 'Lincoln' v. Board of Appeals,* 358 Ill. 135 at page 142: 'The appellant is a corporation and, as a general rule, the character of a corporation and the object for which it was organized must be ascertained from its charter or certificate of incorporation (*People v. Rockford Masonic Association,* 348 Ill. 567; *People v. Rockford Lodge B. P. O. E.,* 348 id. 528; *People v. Wyanet Electric Light Co.,* 306 id. 377; *Distilling Company v. People,* 161 id. 101).' The provisions of the charter determine the character of the organization and the purposes for which it is organized, and is controlling.'' In the instant case, such corporate purposes and objects of the defendant were set forth in the pleadings, charter and articles of incorporation as ''being spiritual, intellectual, social and physical welfare of young men.'' Its income was shown to be derived from four sources, namely, membership dues, temporary rentals, Community Chest of the City of Quincy and its commercial features. In the pursuit of its social and physical welfare programs for young men, comprising exercises, recreations and amusements of various types, it was shown to have maintained a complete plant, including gymnasium, bowling alleys, billiard tables, tracks, pulley weights, physical boxing equipment and a soft ball park equipped with lighting, seating and playground facilities, for the use of its members and of its patrons during its benefit programs. At the time of plaintiff's alleged injuries, he was attending and enjoying the benefits of such program and park facilities as a paying patron for recreational and amusement purposes. From the undisputed evidence in this case, it clearly appears that these facilities were part of the regular equipment of said institution and were in constant use

for the furtherance of its corporate objects. From the evidence, it further appears that the association has no stock nor stockholders and that no person received any profit in the way of dividends or otherwise from its operation; that the income derived from the above sources and programs, including the benefit rentals and gate receipts from the soft ball park, were used and expended solely for conducting and maintaining the same as a part of the social and physical activities, programs and corporate objects of said Y. M. C. A. and not primarily for pecuniary profit. We therefore hold that the defendant, under the evidence herein, was not liable to respond in damages in a common law action in tort for the alleged negligent acts or omissions of its agents and servants.

Plaintiff contends that the case of *Klopp v. Benevolent Protective Order of Elks,* 309 Ill. App. 145, heretofore decided by this court, was a departure from the above well settled principle and that the rule therein followed is applicable to the facts herein. In this contention we cannot concur. The defendant herein was not engaged in any business requiring a special statutory license and creating as incident thereto certain express statutory liabilities against all persons engaged in such business. The liability of the defendant in the *Klopp* case, *supra,* was predicated solely upon its express statutory liability as the holder of a dram shop license (ch. 43, Dram Shops, sec. 135, Ill. Rev. Stat. 1939; Jones Ill. Stats. Ann. 68.042); which statute, remedial in its provisions, specifically made all persons or corporations engaged in the sale or gift of intoxicating liquor or the owner of the property in which the dram shop was located, having knowledge of such use, liable to respond in damages to persons therein defined who sustain injuries "in person, property or means of support" on account of the intoxication of any person caused in whole or in part by such sale or gift of intoxicating liquor. This liability was

one expressly created and fixed by statute under the police powers of the State (*O'Connor v. Rathje,* 368 Ill. 83, 12 N. E. (2d) 878) and in the *Klopp* case, *supra,* it was held to be a risk incident to such business, binding on all who engage therein; that there is no inherent right to sell intoxicating liquor, and that such sales and business are directly controlled and regulated as a matter of public policy by the State under its police powers. The remedy under that act was held to be purely statutory and was unknown to the common law. *Hyba v. C. A. Horneman, Inc.* 302 Ill. App. 143, 23 N. E. (2d) 564; *James v. Wicker,* 309 Ill. App. 397, 33 N. E. (2d) 169. We held in the *Klopp* case, *supra,* that the rule that a charitable organization is not liable to respond in damages in an action in tort, was not applicable to the facts therein for reasons fully set forth in that opinion. There is no connection between the common law right of action in tort and the specific statutory liability created under the Dram Shop Act. *Hyba v. C. A. Horneman, Inc. supra.* Their purposes and remedies are different. In a proper case, both causes of action may be pursued independently, and the satisfaction of one would not abate nor affect the right of action under the other.

The cross error assigned by the plaintiff wherein it is urged that the trial court erred in striking the second count of the complaint is not well assigned. It is a well settled doctrine of the courts of review of this State that it is improper to inform the jury, either directly or indirectly, that the defendant is insured against liability on a judgment that may be entered against him in the trial of the case, as the question whether defendant has someone to help him pay in whole or in part any judgment rendered against him has nothing to do with the merits of the case and to bring it into the law suit imports an influence that could only serve to aid the plaintiff at the expense and prejudice of the defendant. *Kavanaugh v. Parret,* 379

Ill. 273, 40 N. E. (2d) 500; *Smithers v. Henriquez*, 368 Ill. 588, 15 N. E. (2d) 499; *Mithen v. Jeffery*, 259 Ill. 372, 102 N. E. 778. Here, no question arose concerning the necessity of cross-examining a juror to ascertain his or her interest, if any, nor of an inadvertent reference to the matter of defendant carrying indemnity insurance, but it is sought to bring the facts directly before the jury as an issue in violation of the above well settled rule of law in Illinois. The cited Colorado doctrine has not been adopted by the Illinois courts of review. The trial court properly dismissed the second count of the complaint in relation thereto.

Since we hold under the facts and circumstances in evidence that the defendant, as a nonprofit charitable corporation not operating for private gain, is not liable for the alleged tortious acts of its agents or servants, it becomes unnecessary to discuss the alleged error of the trial court in holding that the doctrine of *res ipsa loquitur* applies herein. That question would only become material in undertaking to show a presumption of negligence as against a defendant properly chargeable therewith.

Plaintiff further cites the case of *Mater v. Silver Cross Hospital*, 285 Ill. App. 437, 2 N. E. (2d) 138, and states without argument that his alleged cause of action may also be sustained as predicated upon a contract and that a charitable corporation is liable for damages arising from such breach of contract. A careful reading of that opinion will disclose that the court held that where facts set forth in a complaint showed that the same was manifestly for injuries based upon a tort or negligence of the defendant, a nonprofit charitable corporation not operating for private gain, the court did not err in striking a count actually so predicated upon such tort or negligence. It was held there, and we hold here that there was no evidence tending to prove the essential elements of a cause of action for recovery in assumpsit on a contract under the issues joined in the pleadings.

In conformity with our view of the law applicable to and controlling under the evidence herein, we find and hold that the trial court committed reversible error as indicated and that under the facts and circumstances in evidence, the plaintiff has wholly failed to prove the necessary elements of a cause of action under any of the counts of his complaint. The judgment of the lower court will therefore be reversed.

*Judgment reversed.*