Edward Piper, Administrator of Estate of Helen Piper, Deceased, Appellee, v. Dr. Elaine Epstein et al., Defendants. Dorothy Dye et al., Appellants.

Gen. No. 43,377.

402

Heard in the first division of this court for the first district at the April term, 1945. Opinion filed June 25, 1945. Released for publication July 19, 1945.

LORD, BISSELL & KADYK, of Chicago, for appellants.

KROHN & MACDONALD and IRVING N. STENN, all of Chicago, for appellee; STUART B. KROHN and IAN P. MACDONALD, both of Chicago, of counsel.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

Plaintiff as administrator of the estate of his deceased wife, brought suit for her wrongful death re-

sulting from infection caused by leaving a laparotomy sponge in her abdomen following an operation known as a Caesarean section, and recovered a judgment for $10,000 against the defendant hospital, a charitable institution, the operating surgeon and two nurses taking part in the operation. The operating surgeon settled with plaintiff by the payment of $4,500, and by stipulation the judgment as to her was vacated, her motion for new trial was granted and the cause dismissed as to her. The remaining defendants then moved for the vacation of the judgment entered on the verdict of the jury against all of the defendants, and for a new trial, or in the alternative and without abandoning the motion for a new trial that the judgment against the defendants be reduced $4,500. The court subsequently vacated and set aside the judgment for $10,000 entered on the verdict of the jury against all the defendants, and, the plaintiff remitting $4,500 from the amount of the verdict, judgment was entered against the hospital and the nurses for $5,680.55, being, according to plaintiff, the residue of the amount of the verdict and interest on the verdict from the date of its return to the entry of the judgment. Defendants appeal.

The principal contention of the hospital is that, being a charitable institution, the rule of *respondeat superior* does not apply to it, and therefore it is not liable for the negligence of its agents or servants. Plaintiff concedes that the hospital is a charitable institution and that under the law of Illinois it is exempt from liability for the negligence of its officers, agents and employees, but seeks to hold it liable because at the time of the negligence charged there was in force and effect a policy of insurance issued by a solvent insurer insuring the hospital "against loss from the liability imposed by law upon the assured for damages . . . respecting bodily injuries or death at any time resulting therefrom . . . by reason of

(a) all operations and work undertaken by the assured.'' In addition the insurer was obligated ''to investigate all accidents covered by this policy, and to defend in the name and on behalf of the Assured any claim or suit covered by this policy and brought against the Assured, whether groundless or not, for damages suffered or alleged to have been suffered on account of such bodily injuries or death.''

By the greater weight of authority, charitable organizations are exempt from liability for negligence of their officers, agents and employees. Various reasons are assigned for this exemption. *Geiger v. Simpson M. E. Church of Minneapolis,* 174 Minn. 389, 393. In Illinois it is based on the trust-fund doctrine. As said in *Parks v. Northwestern University,* 218 Ill. 381, 384, ''. . . the exemption accorded to charitable institutions does not rest alone on the doctrine that the State or the sovereign is not liable for the acts of its servants. The doctrine of *respondeat superior* does not extend to charitable institutions for the reasons, 'first, that if this liability were admitted the trust fund might be wholly destroyed and diverted from the purpose for which it was given, thus thwarting the donor's intent, as the result of negligence for which he was in nowise responsible; second, that since the trustees cannot divert the funds by their direct act from the purposes for which they were donated, such funds cannot be indirectly diverted by the tortious or negligent acts of the managers of the funds or their agents or employees.' (5 Am. & Eng. Ency. of Law,–2d ed.–923.) These reasons for exemption apply as well to private as to public charitable corporations.'' In a few states recognizing the trust-fund doctrine charitable institutions have been held liable for negligence, but satisfaction of a judgment against it has been limited to property, if any, not directly connected with the charitable purposes of the organization or a part of the trust fund, *Gamble v. Vanderbilt*

*University,* 138 Tenn. 616; *St. Mary's Academy v. Solomon,* 77 Colo. 463; *Fordyce v. Woman's Christian Nat. Library Ass'n,* 79 Ark. 550. The weight of authority supports defendant hospital's contention that the fact that the charitable institution carries indemnity insurance indemnifying it from liability, does not create liability in instances where such charitable institutions are immune from liability. 10 Am. Jur., Charities, § 152; *Williams' Administratrix v. Church Home for Females and Infirmary for Sick,* 223 Ky. 355; *McKay v. Morgan Memorial Co-op. Industries and Stores, Inc.,* 272 Mass. 121; *Enman v. Trustees of Boston University,* 270 Mass. 299; *Herndon v. Massey,* 217 N. C. 610; *Susmann v. Y. M. C. A. of Seattle,* 101 Wash. 487; *Mississippi Baptist Hospital v. Moore,* 156 Miss. 676; and the more recent cases of *Schau v. Morgan,* 241 Wis. 334, and *Stedem v. Jewish Memorial Hospital Ass'n of Kansas City,* 187 S. W. (2d) 469, decided by the Kansas City Court of Appeals of Missouri on April 30, 1945.

The only case in which a reviewing court of Illinois has considered the effect of liability insurance carried by a charitable institution upon its liability for negligence of its officers and agents is *Myers v. Y. M. C. A. of Quincy, Ill.,* 316 Ill. App. 177. There the trial court struck the second count of the complaint alleging that the defendant carried public liability insurance to protect it from any loss which might occur or any liability which might accrue through the negligence charged in the complaint. This action was sustained on the ground that it was the well-settled doctrine of the courts of review of this State that it is improper to inform the jury either directly or indirectly that the defendant is insured against liability on a judgment that may be entered against him in the trial of a case. The same conclusion, based upon a similar reasoning, was reached in *Greatrex v. Evangelical Deaconess Hospital,* 261 Mich. 327. The cases relied

upon in the *Myers* case (*Kavanaugh v. Parret,* 379 Ill. 273; *Smithers v. Henriquez,* 368 Ill. 588; *Mithen v. Jeffery,* 259 Ill. 372) are cases in which the fact that defendant was insured was brought to the notice of the jury in examination of jurors or by an inadvertent reference by counsel or witness to the matter of the defendant carrying indemnity insurance. In none of the cases was the question of insurance an issue affecting the right of plaintiff to recover or the liability of the defendant. It was an irrelevant matter prejudicing the defendant. If carrying insurance by a charitable institution creates a liability not otherwise existing, the fact that such insurance was carried and the nature and terms of the policy become material issues, and evidence relating thereto, although prejudicial to the defendant, is competent. *People v. Durkin,* 330 Ill. 394, 404. More substantial reasons for denying liability of a charitable institution carrying indemnity insurance are given in the cases cited above. In the *Williams'* case (223 Ky. 355) the court answered the argument of plaintiff that procurement of indemnity insurance by a charitable institution is sufficient of itself to make the institution liable, on the ground that no diversion of trust funds would result, by quoting from *Levy v. Superior Court,* 74 Cal. App. 171, 239 Pac. 1100, as follows: "If a liability may be created or an exemption waived by the acts of the trustee of a charity in procuring and accepting the promise of a third person to make good the losses following such liability or waiver, and the trustee thus allowed to accomplish indirectly that which is not permitted to be done directly, the protection afforded by the rule stated (exemption from liability based on the trust-fund doctrine) would be destroyed. No authorities holding in accordance with the argument of counsel in this behalf have been called to our attention; and it is our opinion that the theory that a charity, not otherwise subject to liability, may become liable

by reason of the procurement by those administering it of indemnity insurance cannot be supported in principle.'' In the latest case brought to our attention, *Stedem v. Jewish Memorial Hospital Ass'n of Kansas City, supra,* the court had under consideration a policy similar to the one before us. It said: ''It thus appears, by the terms of the policy, that the insurance company agreed to pay any loss of the insured (the defendant) to the extent of the latter's liability, only. In other words, the insurance covered the liability of the defendant whatever that might become and not some other or greater liability. To hold that defendant's liability was increased by the mere existence of the insurance policy would, in effect, be writing a different contract of insurance than that entered into between the parties.'' The court also held that, notwithstanding the nonliability of the defendant, ''It may have been also good business judgment on the part of the defendant to have taken out insurance against loss by reason of liability, alone, for although it seems to be the well settled policy in this state to hold charitable institutions exempt from liability in cases of this kind, suits are constantly being brought against such institutions in an effort to have the courts modify or whittle away the rules of immunity.''

Plaintiff relies upon decisions of the courts of Colorado, Tennessee and Louisiana. As shown above, Colorado and Tennessee permit judgments against charitable institutions for the torts of their agents, but prohibit the levying of an execution under such judgment on any property which is a part of the charitable trust. In *O'Connor v. Boulder Colorado Sanitarium Ass'n,* 105 Colo. 259, cited by plaintiff, the court noted that plaintiff affirmatively alleged ''That a judgment against the said defendant will not affect or deplete the charitable trust funds of said defendant in any respect, and that no property impressed with a charitable trust will be levied upon for the satis-

faction of said judgment herein, and the Court's decree herein may and will fully safeguard any charitable trust fund, and plaintiff consents thereto,'' and then held: ''It would seem, therefore, that no depletion of the trust fund of a charitable institution is here sought. Under the circumstances, and in harmony with our previous pronouncements, it would be just and reasonable to hold that defendant herein is subject to this qualified liability. Counsel for defendant cite cases to the effect that the procurement of indemnity or liability insurance does not impose liability for torts where insured would not otherwise be liable. 14 C. J. S. 550. These cases are primarily from jurisdictions where, unlike Colorado, liability of charitable institutions for torts, under the circumstances, is in any event precluded. In view of the qualified liability rule adopted in this state, we feel we are not at liberty to follow these authorities, even if we should see any just reason for doing so, which we do not.'' Cases relied upon by plaintiff as indicating the Tennessee rule are *McLeod v. St. Thomas Hospital*, 170 Tenn. 423, decided by the Supreme Court of the State in July 1936, and *Vanderbilt University v. Henderson*, 127 S. W. (2d) 284, decided by the court of appeals in July 1938 and certiorari denied by the Supreme Court. In the *McLeod* case it was expressly held that the carrying of liability insurance by the defendant gave no additional right to the plaintiff, the court saying (426–427) : ''The policy is in the record. It is an ordinary liability policy, on which no right of action exists in the plaintiff, and no liability attaches to the insurance company, except on claims for damages imposed by law upon the defendant, for an accident resulting in injury or death, within the amount of liability fixed in the policy, and subject to its conditions. The insurer's liability is 'for all claims for damages imposed by law' upon defendant for injury to or death of persons within or upon defendant's premises, etc. It is such policy as

has been construed in *Gray v. Houck,* 167 Tenn. 233, 68 S. W. (2d) 117, and *Associated Ind. Corp. v. McAlexander,* 168 Tenn. 424, 79 S. W. (2d) 556, to be an obligation upon the part of the insurer to pay such obligation as the law may impose upon the insured, under the terms of the policy. We think the fact that the defendant obtained and carried this liability insurance gives the plaintiff no additional right, and imposes no other obligation upon the defendant.'' In considering the liability of a charitable institution for the negligence of its agents the court referred to cases previously determined by it and said (429–430): ''Upon consideration of the cases dealing with the question, and reflecting upon the true principle involved, we think it fairly may be said that the exemption and protection afforded to a charitable institution is not immunity from suit, not nonliability for a tort, but that the protection actually given is to the trust funds themselves. It is a recognition that such funds cannot be seized upon by execution, nor appropriated to the satisfaction of a tort liability. And certainly it is no defense to a tort action, that the defendant has no property subject to execution.'' By this decision the charitable institution is liable, as in Colorado, for its torts and subject to suit therefor, but its trust funds cannot be seized by execution nor appropriated to the satisfaction of the tort liability. Accordingly the court held that the demurrer to plaintiff's replication setting up the indemnity policy should have been overruled and the case tried upon the merits. In the later case of *Vanderbilt University v. Henderson,* the court of appeals followed the *McLeod* case in holding that the rule of nonliability of a charitable institution is not changed by reason of the fact that it carries liability insurance to protect it against liability which the law imposes upon it, and said: ''That the exemption of immunity afforded a charitable institution in this State goes no further than the protection of its

trust funds from being taken to satisfy its liability for a tort of its agents or servants, we think, is established by the recent case of *McLeod v. St. Thomas Hospital,* 170 Tenn. 423, 95 S. W. 2d 917, 919. . . . (p. 287) This we think is a recognition that a charitable institution is liable for a tort of its agent and may be pursued to judgment; but that the institution's trust property cannot be taken to satisfy such judgment; and that where such institution has liability insurance, such insurance is not trust property of the institution and may be appropriated to the satisfaction of such judgment.'' The Louisiana cases (*Rome v. London & Lancashire Indemnity Co. of America,* 169 So. 132, and *Messina v. Societe Francaise De Bienfaissance, et D'Assistance Mutuelle de la Nouvelle Orleans,* 170 So. 801), decided by courts of appeal, cited by plaintiff, have no application because they are based upon statutes giving a right of action to the insured party against the insurance company and denying to it defenses purely personal to the insured not growing out of or connected with the accident or the policy, and the holding of the court that the defense of immunity from liability is a defense purely personal to the charitable institution.

Illinois has not adopted the rule of qualified liability of a charitable institution, which prevails in Colorado and Tennessee. The holding in *Parks v. Northwestern University, supra,* has been followed in an unbroken line of decisions. The exemption from liability is absolute. The rule of *respondeat superior* is not applicable to charitable institutions, and there is no basis for a judgment against them. The policy here involved insures the defendant hospital only against liability imposed by law. It was procured to protect the hospital, not to enlarge its liability. Reason for procuring the insurance is found in the provisions requiring the insurer to investigate and defend all claims and actions for damages, whether groundless or not,

based on negligence of the officers and agents of the hospital. To hold the hospital liable because it carried this protection is to create a new liability and a new contract between the insurer and the insured. The Tennessee cases cited by plaintiff are in harmony with the greater weight of authority that procurement by a charitable institution of insurance to protect it against liability which the law imposes upon it does not impose liability for torts where the insured would not be liable in the absence of insurance. Only the Colorado cases are cited to the contrary. We follow the majority rule and hold that the defendant hospital, as a charitable institution, is not liable.

█ On behalf of the nurses, Dorothy Dye and Beulah Cox, it is contended that the action against them was not instituted within one year after the death of plaintiff's intestate, and that there is no evidence showing negligence on the part of either nurse. Plaintiff's intestate died March 22, 1942; action for her wrongful death was commenced October 16, 1942 by filing a complaint in which the hospital and two surgeons later dismissed from the proceedings were made defendants; on March 19, 1943 a summons was issued against the defendants Dye and Cox; this summons bears the notation, "Pursuant to order of court entered on 3/15/42," but the order does not appear in the record before us; personal service was had upon each of the additional defendants March 22, 1943; the amended complaint, purporting to be filed by leave of court and in which for the first time the defendants Dye and Cox were named and charges of negligence made against them, was filed on March 24, 1943. We assume that an order was entered in apt time authorizing the issuance of the summons March 19, 1943 and permitting the filing of the amended complaint. The summons was served on defendants Dye and Cox on the last day permitted by the statute for the institution of suit (Ill. Rev. Stat. 1943, ch. 70, par. 2 [Jones Ill. Stats. Ann.

38.02]); the amended complaint was filed two days after the expiration of the time for bringing the action. Section 5 of the Civil Practice Act (Ill. Rev. Stat. 1943, ch. 110, par. 129 [Jones Ill. Stats. Ann. 104.005]) provides: "Every civil action, unless otherwise expressly provided by statute shall be commenced by the filing of a complaint." Section 25 [Ill. Rev. Stat. 1943, ch. 110, par. 149; Jones Ill. Stats. Ann. 104.025], relating to bringing in new parties, provides: "A new party shall be brought in by the service of a summons, which shall be drawn in the usual form with the addition of the statement, preceding the teste thereof, that this summons is issued pursuant to an order of the said court made on a date named." The question presented is whether the service of the summons on defendants Dye and Cox, without the filing of the amended complaint, constituted commencement of the action for the wrongful death of plaintiff's intestate within the provisions of the present practice Act. Apparently the question is presented for the first time.

The Civil Practice Act expressly declares when an action is commenced against the original defendants. We find no statutory provision declaring when an action is commenced against new parties, except the provision of section 25 providing that "A new party shall be brought in by the service of a summons." In *Vincent v. McElvain*, 304 Ill. 160, 163, the court said: "It is well established by repeated decisions of this and other courts that a suit or action is commenced when a party puts in motion, under his claim, the instruments of the court. Where the court is one of general jurisdiction it acquires jurisdiction of the plaintiff and the plaintiff's cause when he applies for its power and assistance to compel the defendant to render him his rights under the law. We know of no authority which holds that a suit is not commenced until the court gets jurisdiction of the defendant." The instruments of the court were set in motion and

the defendants Dye and Cox were brought into the action and jurisdiction of them acquired by service of summons within the statutory period for commencement of the action. The amended complaint, based on the same transaction or occurrence declared on in the original complaint, related back to the commencement of the action against the original defendants. *Metropolitan Trust Co. v. Bowman Dairy Co.,* 369 Ill. 222. The action was commenced against Dye and Cox within apt time.

There are no contradictions in the evidence relating to the handling of the sponges at the operation. Plain gauze sponges, not involved here, and laparotomy sponges were used; the laparotomy sponges came in packages of five each, fastened together by a string; as these packages were broken the student nurse, Miss Dye, counted the number of sponges and found five in each package; the strings were hung on a rack to indicate the number of packages broken; each laparotomy sponge used at the operation was handed to the surgeon by Miss Dye; the surgeon was the only person who inserted the sponges in the incision and removed them during the course of the operation; the used sponges were dropped into a basin; the supervising nurse, Miss Cox, then hung each used sponge on a rack on the wall having bars with hooks for ten sponges on each; on completion of the operation Miss Cox, who was charged with the counting of the sponges, counted the unused sponges, the strings—indicating the number of packages that had been broken, and the used sponges on the rack, and then informed the operating surgeon that the sponge count was correct; the incision was closed, leaving in the abdomen of the patient a laparotomy sponge with a string and metal ring attached to it. Miss Dye had nothing to do with the used sponges hung on the rack and did not count them. She had only to do with the unused sponges left on the table. She was not asked by the

operating surgeon about the sponge count and made no statement as to the count. The error in the count was made by the supervising nurse. There is no evidence of negligence on the part of the defendant Dye. The court should have directed a verdict finding her not guilty or entered judgment for her notwithstanding the verdict. There is ample evidence to support the verdict against the defendant Cox.

There is no merit in defendants' contention that the trial court erred in not vacating as to all defendants the judgment for $10,000 entered on the verdict of the jury against all defendants when vacating this judgment as to the operating surgeon, granting her a new trial and dismissing her out of the proceeding. The disposition of the case as to the operating surgeon occurred November 10, 1944; on November 22 the remaining defendants filed their motion to vacate the judgment entered on the verdict of the jury against them and the operating surgeon and for a new trial, or in the alternative and without abandoning the motion for a new trial that the amount of the judgment theretofore entered against the defendants be reduced $4,500; on December 26 the judgment theretofore entered for $10,000 was vacated and set aside as to all defendants and, plaintiff having entered a remittitur of $4,500, judgment was entered against the hospital and the two nurses for $5,680.55, which, plaintiff contends without contradiction by defendants, was made up of the principal amount of $5,500, the damages found by the jury less the remittitur and interest from the date of the verdict to the entry of the judgment. It therefore appears that the action of the court was based in part on defendants' motion. It also conformed to the rule announced by the Supreme Court in *Fredrich v. Wolf*, 383 Ill. 638, and *Brown v. Zaubawky*, 388 Ill. 351. The court did not err in adding to the verdict of the jury interest between the time when the verdict was rendered and judgment entered.

Ill. Rev. Stat. 1943, ch. 74, par. 3 [Jones Ill. Stats. Ann. 67.03]. *Reitz v. Yellow Cab Co.*, 248 Ill. App. 287.

The judgment is reversed as to the hospital and Dye. It is affirmed as to the defendant Cox.

*Reversed as to defendants Hospital and Dye; affirmed as to defendant Cox.*

O'CONNOR, J., concurs.

MATCHETT, P. J., takes no part in this decision.