**Myrtle Mehochko, Plaintiff-Appellant, v. Gold Seal Company, a Corporation, Defendant-Appellee.**

Gen. No. 65–64.

Fifth District.

January 11, 1966.

Meyer & Meyer, of Belleville, for appellant.

Oehmke, Dunham, Boman &·Leskera, of East St. Louis (John W. Leskera, of counsel), for appellee.

MORAN, J.

This is a products liability action in which the plaintiff charges that she was injured because the defendant, a distributor of a product known as Firewax, negligently and carelessly failed to warn that this product was dangerous to the human body when it came into contact with the skin. The jury found the issues in favor of the defendant and the court entered judgment in favor of the defendant on the jury's verdict. Plaintiff appeals from the denial of her post-trial motion for a new trial.

On August 19, 1961, John M. Arnold purchased a can of Firewax at plaintiff's request and took it to the home of the plaintiff in O'Fallen, Illinois. Arnold sprayed this on some charcoal in a portable grill, with the plaintiff standing just a few inches away. Arnold "miscued" and allowed some of the Firewax to fall over the grill. Plaintiff did not notice any on her shoe at that time. One-half an hour to forty-five minutes later, while she was barbecuing, plaintiff felt a burning sensation at her foot. She then noticed a substance on her shoe that looked like the remains of the substance sprayed on the charcoal. Plaintiff wiped off the substance, took off her shoe, then put the shoe on again and continued to barbecue. About forty-five minutes to one hour later, after she finished barbecuing, she went indoors, removed her shoe, washed her foot, and applied medication.

Plaintiff did not have the substance in the can which she purchased tested, and it was not tested to her knowledge. Her examining physician did not test the substance and did not know the ingredients of Firewax.

Firewax is manufactured by R. M. Hollingshead Corporation. The defendant is the distributor. Firewax is sent to the defendant in cases, ready for resale. The label is on the product when it leaves Hollingshead Corporation.

Plaintiff claims that the court committed reversible error in permitting Dr. Harold C. Lederer, a biochemist

and toxicologist employed by the Hollingshead Corporation to testify concerning the results of certain tests performed on this product under his direction and supervision. We do not believe plaintiff's objection to this testimony was specific enough to make this point available for review, so we will not consider it in this opinion.

Plaintiff also claims the trial court committed reversible error in admitting inadmissible hearsay evidence on behalf of the defendant over plaintiff's specific objection. In addition to giving testimony of his own on behalf of defendant, Dr. Lederer also read the results of a test conducted on Firewax by an independent biological laboratory into evidence over the objection of the plaintiff.

McCormick, Evidence, p 460, defines hearsay as ". . . such offered to show the truth of matters asserted therein and thus resting for its value on the credibility of the out-of-court assenter."

Appellants cite numerous cases to the effect that it is hearsay to read the reports of another into evidence. Appellees do not contest the point that this was hearsay, but urge that the report was admissible as an exception to the hearsay rule.

Appellees rely principally upon Smith v. Broscheid, 46 Ill App2d 117, 196 NE2d 380 (1964) and upon Hickey v. Chicago Transit Authority, 52 Ill App2d 132, 201 NE2d 742 (1964). In Smith a doctor testified as to the facts shown in an X-ray after another doctor had pointed out the indications and interpreted the results for the testifying doctor. The first doctor testified concerning things visible to him and within his own knowledge and expertise, i. e., he pointed out facts and indications on an X-ray which the second doctor who testified then saw and recognized. The second doctor was allowed to testify based on matters within his own knowledge which were first shown him or interpreted to him by the first doctor. He was allowed to base his expert opinion of what the

pictures showed upon his own knowledge plus another expert's opinion.

In Hickey the court concluded at page 139 that "it is proper for an attending physician to testify with respect to the pathology revealed by a myelogram or X-ray, even though he did not perform the myelogram or take the X-ray, and had sought the advice of a specialist in its interpretation, but the myelogram or X-ray must be produced and put in evidence so as to furnish the basis for cross-examination."

██ In tests, the essential elements are the results, methods and qualifications of the tester. The method and qualification of the tester (to conduct the test and correctly read its results) give the results their veracity. Dr. Lederer was not testifying from his own knowledge about an exhibit (like the X-ray or myelogram) before the court. He could not be cross-examined about an exhibit before the court. He was not testifying from his own knowledge about an exhibit before the court; he knew no more about the independent tests than he had read (been told). The tests were not before the court and he could not be cross-examined about the method (save what he read about it) nor about the tester's qualifications to perform the experiments and correctly interpret the results. Dr. Lederer was a stranger to the evidence he introduced. He knew nothing about it save through hearsay; he could not be cross-examined about the essence of the independent tests.

The lower court erred in admitting this inadmissible hearsay evidence. Dr. Lederer's testimony did not come within the hearsay exception in Smith v. Broscheid, supra, or Hickey v. Chicago Transit Authority, supra.

██ Is this error so prejudicial to plaintiff that she is entitled to a new trial? When an appellant alleges there is insufficient evidence to support a verdict, he indicates the other party failed to prove his case. When

an appellant alleges prejudicial error in the admission of inadmissible hearsay, he alleges the admission probably or substantially controlled the result. 5 Callaghan's Illinois Evidence, 214 (1964).

■ Reviewing the various testimony, a physician testified for plaintiff-appellant that the injury "might or could have been caused by the material spilled on her foot"; Dr. Lederer, a biochemist-toxicologist, testified that Firewax as usually produced will not burn the skin; and finally, Dr. Lederer read the results of an independent testing firm.

The inadmissible hearsay was approximately one-half of the defendant-appellee's case. Whether a jury, faced with a physician's contrary testimony would. have believed defendant's witness cannot be known. The effect of an independent laboratory's test on the jury, however, lent an air of impartial veracity to Dr. Lederer's opinion and test results; it did not come to light through a representative of that laboratory called by the defendant. The independent test results appeared, through hearsay, as an impartial imprimatur to Dr. Lederer's expert opinion.

The inadmissible hearsay verified his results and opinion. Prior to the admission of the hearsay results, both plaintiff and defendant had expert opinion to support their allegations. Following the erroneous admission, the defendant had the apparent blessing and confirmation of an independent laboratory. These independent results have a misleading air of impartiality about them because defendant did not have to call the tester as a witness.

The error in admitting inadmissible hearsay was prejudicial to the plaintiff-appellant. The judgment is therefore reversed and the cause is remanded with directions to grant the motion for a new trial, and for such other

and further relief as is not inconsistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

EBERSPACHER, P. J. and GOLDENHERSH, J., concur.