MARIE CHLOUPEK, Plaintiff-Appellee, *v.* LOUVENIA JORDAN, Defendant-Appellant.

First District (2nd Division)   No. 63213

Opinion filed June 14, 1977.

Fisch & Lansky and Haft, Shapiro & Haft, of Chicago (Morris A. Haft, of counsel), for appellant.

John F. Keefe, of Chicago, for appellée.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Plaintiff, Marie Chloupek, brought suit against defendant, Louvenia Jordan, in the circuit court of Cook County for personal injuries which she allegedly suffered as a result of being struck by an automobile operated by defendant. After a jury trial, a verdict was returned for plaintiff in the amount of $15,000. The defendant then filed a post-trial motion for judgment notwithstanding the verdict, a new trial and for remittitur. This motion was denied by the trial court. Defendant appeals from the trial court's denial of her motion for a new trial, contending that she was prevented from receiving a fair trial because the trial court abused its discretion and committed error and because plaintiff's attorney conducted himself in a prejudicial manner during the proceedings.

We affirm.

Although defendant raises no issue as to her liability in this matter, a short summary of the facts elicited at the trial is necessary for our determination of the issue raised in this case.

On October 7, 1972, plaintiff attempted to cross Lawndale Avenue in Chicago, Illinois, by walking westbound in the south crosswalk of the 26th Street and Lawndale intersection. When she reached the middle of the crosswalk, plaintiff observed defendant's automobile approach this intersection from the west on 26th Street and make a stop at the intersection's four-way stop sign. Without again looking at the car, plaintiff continued across Lawndale Avenue. When she was approximately three feet from the southwest curb, plaintiff was struck by the right front of defendant's vehicle as she executed a right turn to proceed south. Plaintiff testified that the automobile came in contact with her right shoulder, ankle and heel.

After this collision, defendant stopped her vehicle. She and a passenger in her car exited the automobile and walked over to plaintiff to see what had taken place. Defendant observed plaintiff on the pavement and

testified that plaintiff was turning from her left side to her right and that her mouth was bleeding. The police were then called, and plaintiff was transported to the emergency room of a hospital.

At the hospital X rays were taken of plaintiff's right ankle and left hand, but no fractures were revealed. However, upon medical examination it was discovered that flesh had been torn from plaintiff's right ankle and heel. These wounds were cleaned; the torn skin was taped together, and bandages were applied. No stitches were used to close the lacerations.

Plaintiff was taken home the same day by a friend and a police officer. Upon undressing at her residence, plaintiff noticed that her right arm was swollen and that her right hip was black and blue.

Following the accident, plaintiff was bedridden for two weeks except for visits to her physician. Her daily needs were attended to by two friends during this period. Over the next 13 months plaintiff saw her personal physician about 40 times for treatment. The bandages on her right ankle and heel were changed ten times before the bleeding stopped.

Plaintiff testified that as a result of being struck by the automobile her right ankle has been constantly swollen; that she cannot sit properly; that she can no longer perform household work which requires her to get down on her knees; that she is in pain most of the time; and that she takes medication to relieve this pain.

At the time of the October 7 accident, plaintiff was 71 years old and used a cane when she walked. Plaintiff testified that she suffered from an arthritic left hip and that she used the cane for added stability. She also stated that she worked for a small neighborhood grocery six days a week prior to this accident. In return for her work at this store, the owner gave plaintiff food and household items. Plaintiff estimated that she took home $20 worth of food every week. However, she admitted that the store owner never gave her cash and that he never provided her with a W-2 Internal Revenue Service form. Lastly, plaintiff testified that she never returned to work at the grocery after being struck by defendant's automobile.

Plaintiff's attending physician died before trial. Because of this, plaintiff's attorney sent plaintiff to another doctor for two examinations. This physician testified that he conducted the first examination of plaintiff about a year after the accident had taken place. During this examination he discovered that plaintiff's left hip was fixed in a flexed position, and he concluded from his observation that this condition was caused by an old injury. The physician also alleged that plaintiff was permanently disabled and was in pain as a result of the injuries she suffered in the automobile accident.

At the trial defendant testified that she saw plaintiff fall to the pavement

when she made her right turn. However, defendant denied striking plaintiff.

In support of her contention that she was denied a fair trial, defendant argues: (1) that the trial court erred when it allowed certain nonimpeaching statements by defendant to stand over the objection of defense counsel; (2) that the court erred when it failed to strike these statements and when it failed to instruct the jury to disregard such testimony; (3) that the court erred when it allowed plaintiff's hypothetical; (4) that the court erred in giving and refusing certain jury instructions; (5) that plaintiff's counsel improperly examined plaintiff; (6) that plaintiff's counsel improperly examined defendant; (7) that plaintiff's counsel repeatedly interrupted defense counsel's cross-examination of the examining physician in a manner prejudicial to defendant; and (8) the closing argument of plaintiff's counsel was improper and was intended only to inflame the jury against defendant.

Ordinarily a litigant is precluded from raising on appeal those matters not raised in the post-trial motion. (*Mangan v. F. C. Pilgrim & Co.* (1st Dist. 1975), 32 Ill. App. 3d 563, 575, 336 N.E.2d 374, 383-84; Ill. Rev. Stat. 1975, ch. 110A, par. 366(b)(2)(iii).) Defendant's second, fifth and seventh arguments were not raised in her post-trial motion. Accordingly, it is our opinion that these contentions cannot now be raised on appeal.

■■ In her first allegation defendant argues that the following three attempted impeachments by plaintiff's counsel constituted prejudicial error.

During plaintiff's case the attorney for plaintiff called defendant as an adverse witness pursuant to section 60 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60) and attempted to demonstrate that her trial testimony regarding the position of plaintiff on the ground after the accident was inconsistent with her prior deposition statements. Defendant testified that plaintiff was lying on her right side when she stopped her car and that plaintiff had shifted to her left side by the time she exited her vehicle. At this point plaintiff's counsel attempted to impeach defendant by referring to her deposition statement that plaintiff was lying on her back. Defense counsel objected to this questioning and argued that defendant's statement was not impeaching. However, the trial court overruled this objection. In later testimony defendant conceded: "Well, the lady turned so many times, I might have said that. I am not saying I didn't say that."

Plaintiff's counsel then asked defendant if she had spoken to plaintiff after she walked up to her. Defendant admitted that she had attempted to talk to plaintiff. Plaintiff's counsel then referred to defendant's deposition statement to the effect that she did not remember if she said anything to

plaintiff subsequent to the accident. Once again the attorney for defendant objected to this attempted impeachment. The trial court sustained the objection because in its opinion the deposition statement was not inconsistent with defendant's trial testimony.

Finally, defendant testified that plaintiff stated, "Let me get up from here." At this time plaintiff's counsel referred to defendant's deposition and asserted that she had answered "no" to the following question: "But she didn't say anything?" Defense counsel objected and argued that this deposition answer was not impeaching because the actual question was: "Did she say anything to you?" The trial court admitted that this was in fact the actual question, but it allowed plaintiff's counsel's assertion to stand for the record.

Alleged error in the admission of evidence designed to impeach a witness or affect his credibility is not reversible where no prejudice has resulted. See *McMahon v. Chicago City Ry. Co.* (1909), 239 Ill. 334, 341, 88 N.E. 223, 225.

It is true that in the three examples enumerated above defendant's deposition statements tend to contradict her trial testimony. However, we do not feel these attempts at impeachment were so erroneous that defendant was denied a fair trial.

Defendant also argues that the hypothetical question which was given to the examining physician by plaintiff's counsel was improper. She alleges that the hypothetical contained misstated facts; that it omitted the findings of the emergency room examination; and that it did not include all of the examining physician's objective findings.

■■ The object of a hypothetical question is to obtain an opinion from one who by a previous course of habit or study has acquired a knowledge of a subject not within the knowledge of men of ordinary experience. This expert opinion enables the jurors to draw inferences from the evidence which their want of knowledge would otherwise prevent. *Chicago Union Traction Co. v. Roberts* (1907), 229 Ill. 481, 484, 82 N.E. 401, 402.

Counsel has a right to propound a hypothetical question provided there is an evidentiary basis for each element of the hypothetical question. (*Gus T. Handge & Son Painting Co. v. Industrial Com.* (1965), 33 Ill. 2d 201, 206, 210 N.E.2d 498, 501.) So long as the expert witness is not called upon to decide any controverted fact but is asked to assume the truth of facts testified to, he may give his opinion thereon in any form. *Clifford-Jacobs Forging Co. v. Industrial Com.* (1960), 19 Ill. 2d 236, 243, 166 N.E.2d 582, 587.

In support of her contention that the hypothetical question contained misstated facts, defendant points out that the hypothetical assumed that the woman had an arthritic hip although the examining physician

described plaintiff's left hip as being fixed in a flexed position, and it also assumed that the woman had been employed prior to the accident although plaintiff admitted that she worked at the grocery store only as a favor to the owner.

We disagree with this contention. Both assumptions had a basis in the evidence. It is true that the examining physician testified that plaintiff's left hip was "frozen." However, plaintiff stated in prior testimony that she suffered from an arthritic left hip before the accident. Also, there is sufficient evidence to establish that plaintiff was employed at the grocery store. She worked six days a week at the store, and for this work the store owner gave her all the food and household items that she needed.

Defendant further asserts that the hypothetical did not include the fact that during the emergency room examination only plaintiff's right ankle and left wrist were X-rayed. She argues that this fact is very relevant because it would serve to negate plaintiff's allegation that she had suffered hip and shoulder injuries in the accident.

■■■ There is no rule requiring that all material facts be included in a hypothetical question. The adversary may on cross-examination supply omitted facts and ask the expert if his opinion would be modified by them. Furthermore, if the trial judge deems the original question unfair, he may in his discretion require that the hypothesis be reframed to supply an adequate basis for a helpful answer. (*Wirth v. Industrial Com.* (1974), 57 Ill. 2d 475, 480, 312 N.E.2d 593, 595.) Defense counsel had the right to cross-examine the physician, and he could have supplied the omitted facts by asking his own hypothetical question. Defense counsel started to ask the physician a hypothetical which contained the fact about the emergency room X rays, but he later decided to withdraw this question. Under these circumstances the defendant suffered no prejudice.

Defendant's fourth argument concerns the fact that plaintiff's trial testimony indicated that defendant was insured. Defense counsel had attempted to impeach plaintiff by referring to a statement that she had given to two men in her home after the accident. On re-direct examination the following colloquy took place between plaintiff's counsel and the plaintiff:

> Plaintiff's counsel: "Mrs. Chloupek, a few days after the accident, two men came to your home, is that right?"
>
> Plaintiff: "yes, sir."
>
> Plaintiff's counsel: "Do you know who they were?"
>
> Plaintiff: "I don't know. They said they [*sic*] from [*sic*] insurance company."

At this point defense counsel moved for a mistrial, arguing that plaintiff's identification of the two men as insurance company employees prejudiced defendant. The trial court properly denied this motion since

the identification of the two insurance agents came in response to an attempt by plaintiff's counsel to identify the men who took a statement which the defense used for impeachment purposes. *Conover v. Smith* (3d Dist. 1974), 20 Ill. App. 3d 258, 261, 314 N.E.2d 638, 641.

During the conference on jury instructions defense counsel proposed an insurance instruction since the existence of insurance had been disclosed to the jury. The instruction read:

> "Whether a party is insured has no bearing whatever on any issue that you must decide. You must refrain from any inference, speculation, or discussion about insurance." (IPI Civil No. 2.13 (2d ed. 1971).)

This proposed instruction was refused by the trial court.

The defendant argues that once the existence of insurance was revealed to the jury the insurance instruction was necessary to protect her from prejudice. Without this cautionary instruction, she asserts that the jury would improperly consider the factor of insurance · in assessing damages.

■■ The giving of cautionary instructions is within the sound discretion of the trial court. (*Birmingham Fire Insurance Co. v. Pulver* (1888), 126 Ill. 329, 339, 18 N.E. 804, 808.) The trial court's refusal to give a certain instruction will not be deemed to be reversible error unless the complaining party has in some way been prejudiced by the court's denial. *Trippel v. Lott* (1st Dist. 1974), 19 Ill. App. 3d 936, 945, 312 N.E.2d 369, 376.

Defense counsel made the first reference to the two insurance agents when he attempted to impeach plaintiff by referring to the statement taken in her home. Under the *Conover v. Smith* exception plaintiff's counsel was then entitled to attempt to identify the takers of this statement. Based on the record we do not believe that defendant was prejudiced by the court's refusal to give the insurance instruction.

Defendant further contends that the trial court erred when it gave the jury a loss of earnings instruction which contained a life expectancy figure of 10.8 years because this instruction was never presented or discussed during the instruction conference and because there was no credible evidence elicited at the trial to support plaintiff's claim that she had suffered a loss of earnings on account of the accident.

The record does not reveal any discussion about the loss of earnings instruction during the instruction conference. However, the record does reflect that defense counsel failed to raise an objection when plaintiff's counsel referred to plaintiff's life expectancy and loss of earnings during closing arguments. Defense counsel also failed to object when the loss of earnings instruction was read to the jury by the trial court. Additionally, the word "given" was written on the disputed instruction. During the

hearing on defendant's post-trial motion, the trial judge stated that the court's act of writing this word on the instruction meant that the instruction had been discussed during the conference. We feel that these facts indicate that the loss of earnings instruction may well have been discussed at the instruction conference. However, we must assume that for some reason this discussion was not put in the record or that no court reporter was present when the discussion took place.

As we stated above, the record establishes that plaintiff received earnings in the form of food and household items from the grocery store owner in return for her work. She was prevented from working at the grocery store by the injuries that she suffered when struck by the automobile.

In her last argument defendant asserts that there are 17 instances of prejudicial error in the closing argument of plaintiff's counsel. After carefully examining these examples, it is our opinion that many of the comments were improper. However, defense counsel failed to raise an objection in 12 of these instances. The failure to object must be considered as a waiver of the objection. *Lindroth v. Walgreen Co.* (1950), 407 Ill. 121, 136, 94 N.E.2d 847, 854.

The defense counsel did make objections in the remaining five examples. The trial court specifically sustained three of these objections. We feel that the trial court's act of sustaining these objections sufficiently insulated defendant from prejudicial error.

■■ In the other two instances cited by defendant there is some question whether or not the trial court sustained the objections by the attorney for defendant. After reviewing the argument of plaintiff's counsel, we do not feel that his remarks in these particular examples were of such a character as to have prevented defendant from receiving a fair trial, even if the trial court did in fact fail to sustain defense counsel's objections.

We have considered, but find it unnecessary to discuss, other contentions of defendant which we find to be without merit.

■■ The object of this court on review is not to determine whether the record is totally free of error but whether any error occurred which operated to the prejudice of the appellant or unduly affected the outcome below. (*Saputo v. Fatla* (1st Dist. 1975), 25 Ill. App. 3d 775, 789, 324 N.E.2d 34, 45.) Furthermore, a motion for a new trial is addressed to the discretion of the trial judge, and his judgment thereon will not be reversed except for a clear abuse of discretion which must affirmatively appear in the record. (*Potter v. Ace Auto Parts & Wreckers, Inc.* (1st Dist. 1964), 49 Ill. App. 2d 354, 356, 199 N.E.2d 618, 619.) We have carefully reviewed the record and conclude that the errors committed, either individually or collectively, do not require a new trial. Consequently we feel that the trial

judge properly exercised his discretion in denying defendant's motion.

For the aforementioned reasons the trial court's denial of defendant's motion for a new trial is affirmed. Plaintiff's request that defendant pay a penalty amounting to 10% of the judgment is denied. Ill. Rev. Stat. 1975, ch. 33, par. 23.

Judgment affirmed.

DOWNING, P. J., and STAMOS, J., concur.