JACK CALLAN *et al.*, Plaintiffs-Appellees, *v.* JAMES J. NORDLAND, M.D., Defendant-Appellant.

Third District   No. 82—429

Opinion filed April 29, 1983.

Thomas Feehan, of Thomas, Wallace, Feehan, Baron and Kaplan, Ltd., of Joliet, for appellant.

Joseph E. Duffy, of Schenk, Duffy, Quinn, McNamara, Phelan & Carey, of Joliet, for appellees.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Plaintiffs Jack Callan and Angela Callan filed a complaint for damages for personal injuries allegedly occasioned by the negligence of defendant James J. Nordland, M.D. After trial in the circuit court of Will County, the jury returned verdicts of $15,000 and $250,000.

Angela Callan (hereinafter plaintiff) has suffered from intestinal colitis for over 35 years, and defendant, a board-certified internist, began treating her in 1966. In early 1978, plaintiff was being primarily treated with Azulfidine and was suffering from a number of negative side effects. In June 1978, she was admitted to Silver Cross Hospital and, upon her discharge, was diagnosed by defendant as suffering from acute exacerbated ulcerative colitis, diabetes, and chronic anxiety syndrome. Among the drugs prescribed at this time was Neomycin Sulfate (Eli Lilly's brand name for generic neomycin sulfate), which defendant substituted for Azulfidene due to the side effects of the latter drug.

The Neomycin Sulfate prescription was phoned in to an Osco pharmacy which referred it to Spartan pharmacy. There it was filled with Mycifradin, Upjohn's brand of neomycin sulfate. Richard J. Holly, a registered pharmacist at Spartan pharmacy, testified that it was the standard of practice in the Romeoville area that when a doctor ordered a drug under a chemical or generic name, the pharmacist is allowed to fill the prescription with a brand or trademark name. All subsequent prescriptions were filled with Neomycin Sulfate manufactured by Eli Lilly.

Four months after her July 1978 hospital discharge, plaintiff began to experience dizziness and something happening in her ears. Four months after this, her husband noticed she was having some dif-

ficulty hearing. In July 1979, plaintiff first complained of buzzing and shimmering in her head to defendant, who recommended she see a specialist. Later that month she did so and, after an audiogram, was diagnosed as having progressive hearing loss from old age. When plaintiff next saw defendant in September 1979, she was wearing the hearing aid recommended by the specialist and expressed concern that the drug Sinequan might be causing her hearing loss. Defendant then discontinued the drug. In October 1979, defendant substituted Azulfidine for Neomycin Sulfate as he thought the buzzing and shimmering in plaintiff's head might be caused by the latter drug.

After reading certain warnings, to which we shall return, in the Physician's Desk Reference, plaintiff terminated her professional relationship with defendant. In May 1980, she became a patient of John Ponsiglione, M.D., a gastroenterologist. Ponsiglione testified that based on the standard of medical care for a board-certified internist as defendant in the Joliet area, treatment with Neomycin Sulfate for a prolonged period of time was not an appropriate treatment for plaintiff's ulcerative colitis. He attributed her hearing loss to the 14 months of treatment with the drug. In July 1980, plaintiff was examined by Robert H. Ossoff, a board-certified otolaryngalogist. He determined that she had no useful hearing and testified that, based on a reasonable degree of medical certainty there was a relationship between the neurosensary hearing loss and the fact that plaintiff had taken neomycin sulfate for 14 months.

⋅ The sole question presented for our review is whether the trial court erred in the admission of one of plaintiff's exhibits when the evidence allegedly showed that it was neither relevant nor material, and committed further error in quoting from the exhibit in the instructions to the jury. The exhibit in question is a warning contained in the Physician's Desk Reference's listing for Mycifradin:

"WARNING BECAUSE OF REPORTED CASES OF DEAFNESS FOLLOWING THE ORAL USE OF NEOMYCIN AND THE POTENTIAL NEPHROTOXIC EFFECTS, PATIENTS SHOULD BE UNDER CLOSE CLINICAL OBSERVATION INCLUDING AUDIOMETRIC TESTING BEFORE AND DURING LONG TERM THERAPY. Patients with renal insufficiency may develop toxic blood levels of the drug unless doses are properly regulated. If renal insufficiency develops during treatment, the dosage should be reduced or the antibiotic discontinued. Urine and blood examinations and audiometric tests should be given prior to and during extended therapy in individuals with hepatic and/or renal disease to avoid nephrotoxic-

ity and eighth-nerve damage from improper dosage."
The motivation for this assignment of error can be seen when the Mycifradin warning is compared to that for Neomycin Sulfate manufactured by Eli Lilly:

> "Patients treated with oral neomycin should be under close clinical observation because of the potential nephrotoxic and ototoxic effects. Patients with renal insufficiency may develop toxic blood levels of the drug unless doses are properly regulated. If renal insufficiency develops during treatment, the dosage should be reduced or the antibiotic discontinued. Urine and blood examinations and audiometric tests should be given prior to and during extended therapy in individuals with hepatic and/or renal diseases to avoid nephrotoxicity and eighth-nerve damage from improper dosage."

Defendant contends that as he allegedly only prescribed the Eli Lilly drug, any reference to the Upjohn warning was improper.

Defendant bases this contention on a holding of *Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, 418, 303 N.E.2d 392, 396:

> "Under the circumstances shown, the explicit instructions furnished by the manufacturer for the proper manner of intravenous injection of the Sparine and the warning of the hazards accompanying its improper administration provide the proof of the proper professional standards which would ordinarily be shown by expert medical testimony. In *Mulder v. Parke Davis & Co.* (1970), 288 Minn. 332, 339-340, 181 N.W.2d 882, 887, the Supreme Court of Minnesota said: 'Where a drug manufacturer recommends to the medical profession (1) the conditions under which its drug should be prescribed; (2) the disorders it is designed to relieve; (3) the precautionary measures which should be observed; and (4) warns of the dangers which are inherent in its use, a doctor's deviation from such recommendations is prima facie evidence of negligence ***' and we agree."

Defendant argues that, under *Ohligschlager*, he was not required to be aware of the warnings of other drug manufacturers as to a drug he did not prescribe.

During the trial of this cause, defendant testified that in designating Neomycin Sulfate, he expected and intended the druggist to fill the prescription with Neomycin Sulfate manufactured by Eli Lilly. This testimony contradicted his deposition testimony that he intended the prescription to be filled with neomycin sulfate manufactured by any company. Holly testified that his records showed no mention of a

manufacturer when the prescription was phoned in; thus it was filled with Mycifradin as it was the only brand of neomycin sulfate in stock at the time. The original prescription was refillable without further direction from defendant for six months. When plaintiff's initial month's supply was exhausted, the prescription was refilled with Neomycin Sulfate manufactured by Eli Lilly not because such was requested, but rather because the druggist found it less expensive. Thus, the only nexus between defendant and the use of the Eli Lilly product were, if believed by the jury, defendant's expectations and intentions.

Under the particular circumstances of this cause, we find no error in the trial court's admitting the exhibit and allowing a phrase from it to be used in the issue instruction. At best there is a factual dispute whether defendant at any time communicated his expectation and intention that the prescriptions be filled with Neomycin Sulfate manufactured by Eli Lilly. When the prescription was phoned in, there was no way a pharmacist, without such a communication, could distinguish between Neomycin Sulfate and neomycin sulfate. Because of this, the prescription was initially filled with Mycifradin. We therefore hold that where a brand and generic name cannot be distinguished by a pharmacist, and another brand of a generically equivalent drug is used to fill a prescription, the manufacturer's warning for the drug actually used may be admitted into evidence. In so holding, we express no opinion as to any issue not raised by the particular circumstances of this cause.

Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

ALLOY and BARRY, JJ., concur.