LEONA MIELKE, Plaintiff-Appellant, *v.* CONDELL MEMORIAL HOSPI-
TAL *et al.*, Defendants-Appellees.

Second District   No. 83—360

Opinion filed April 30, 1984.

Donald T. Morrison & Associates, of Waukegan, for appellant.

Joanna C. New, D. Kendall Griffith, and Michael F. Henrick, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee Condell Memorial Hospital.

Robert Marc Chemers, of Pretzel & Stouffer, Chartered, of Chicago, for appellee Robert Munson.

James A. Christman and Ruth E. Van DeMark, both of Wildman, Harrold, Allen & Dixon, of Chicago, for appellee Burton Miller.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Leona Mielke, appeals from an order of the circuit court of Lake County directing a verdict in favor of defendant-appellee Condell Memorial Hospital (Condell Hospital) and from a judgment entered on jury verdicts in favor of defendants Burton Miller, M.D., and Robert Munson, M.D. Plaintiff assigns as errors the improper impeachment of its expert witness, the trial court's reservation of an evidentiary ruling until after cross-examination, the trial court's order granting Condell Hospital's motion for a directed verdict, and its exclusion of expert testimony summarizing the medical literature. We affirm.

Plaintiff was admitted to Condell Hospital on December 10, 1978, for emergency treatment of a perforated duodenal ulcer. Her blood pressure was extremely low, her pulse was rapid, she was experienc-

ing severe abdominal pain and had been vomiting blood. Munson, an internist and the attending physician, testified she was in shock. Miller, a board-certified general surgeon, examined plaintiff and recommended she be given penicillin and gentamicin, two antibiotic drugs.

Plaintiff subsequently underwent two surgical procedures, the first to repair a perforated ulcer, and the second to remove an abdominal abscess. Both surgeries were performed by Miller. To combat a potentially serious infection, plaintiff was given gentamicin before and after each of the surgical operations. She also was given Lasix, a diuretic, to counteract fluid which had collected in her lungs following the abdominal abscess surgery. Both drugs have an indicated side effect of autotoxicity.

On December 27, plaintiff complained of a headache and blood was discovered in her urine. At trial, plaintiff's witness, Dr. M. Reese Guttman, testified that plaintiff suffered loss of her labyrinth, the inner ears' balance function because of the gentamicin she was given at the hospital. Guttman stated persons suffering from a total loss of labyrinthian function on each side are unable to walk without aid, are housebound, and cannot perform household duties unless they are seated. He further testified the condition was permanent.

At the close of plaintiff's case, the trial court allowed the motion of Condell Hospital for a directed verdict because of the absence of proof of the hospital's negligence. Thereafter, the jury returned verdicts of not guilty for the defendant doctors and the trial court entered judgment on the verdicts. Plaintiff's post-trial motion was denied and she filed a timely notice of appeal.

### RESERVATION OF RULING
### ON ADMISSIBILITY OF EVIDENCE

■ Plaintiff first assigns as error the trial court's reservation of its ruling on the admissibility of the drug manufacturer's insert. During his direct testimony, plaintiff's expert witness, John W. Frost, M.D., was asked to identify plaintiff's exhibit No. 3, the gentamicin package insert, and was asked whether the insert embodied the standard of care about which he testified. When Frost responded that it did, plaintiff offered the package insert into evidence. Defense counsel objected on the ground that the standard of care could only be established from physician testimony, the directions were not mandatory, and the foundation for the insert was insufficient. The court elected to reserve its ruling until after the cross-examination of Frost and also reserved its ruling on plaintiff's exhibit No. 4, the 1977 Physi-

cian's Desk Reference (PDR), also identified by Frost as embodying the standard of care. Following re-cross-examination of Frost, the package insert and the PDR were admitted into evidence by stipulation of all of the parties. The stipulation included the condition that exhibit Nos. 3 and 4 would not go to the jury.

At the close of plaintiff's case, plaintiff's attorney read the contents of exhibit No. 3 to the jury while the package insert was projected onto a screen in the darkened courtroom. Plaintiff's attorney also used both exhibit Nos. 3 and 4 to cross-examine Drs. Miller and Munson and their expert witnesses and relied upon both exhibits in her closing argument. The essence of plaintiff's argument, therefore, is solely that the trial court erred by reserving its ruling on the admissibility of the exhibit until after Frost's direct testimony even though the exhibits were subsequently introduced.

The cases cited by plaintiff do not warrant the conclusion that the trial court erred in the case at bar. The supreme court in *Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, 417, held that a package insert was admissible as *prima facie* evidence of the requisite standard of care. In *Ohligschlager,* however, the plaintiff had not offered expert witness testimony; therefore, the court concluded "this record presents an appropriate state of facts for applying an exception to the rule." Here, in contrast, plaintiff introduced expert testimony. Plaintiff's reliance on *Alton v. Kitt* (1982), 103 Ill. App. 3d 387, 431 N.E.2d 417 and *Callan v. Nordland* (1983), 114 Ill. App. 3d 196, 448 N.E.2d 651, also is not directly on point. In *Alton,* the court allowed the expert to testify from the PDR not only because he was familiar with it, but because he had written portions of it. (*Alton v. Kitt* (1982), 103 Ill. App. 3d 387, 398, 431 N.E.2d 417, 425.) Here, there was no testimony that Frost wrote any portion of the PDR. In *Callan,* the court held that the package insert from a drug used to fill a prescription for another generically equivalent drug could be admitted into evidence. Here, no evidence was presented like in *Callan* of a drug's brand name being confused with its generic name. Also, the *Callan* court expressly limited its holding to the particular facts presented there: "[W]e express no opinion as to any issue not raised by the particular circumstances of this cause." *Callan v. Nordland* (1983), 114 Ill. App. 3d 196, 200, 448 N.E.2d 651, 654.

Even were these cases directly on point, plaintiff's argument here must fail because the insert was read to the jury, was used during cross-examination and closing argument, and was admitted into evidence by stipulation. The parties also agreed that the package insert and the PDR were the same. Therefore, the jury was presented with

the contents of the package insert and the relevant portion of the PDR. Although plaintiff asserts prejudice because Frost was precluded from using the insert in his direct testimony, we note that plaintiff did not attempt to recall Frost for examination after exhibit Nos. 3 and 4 were admitted. Plaintiff cites no case where the trial court's reservation of an evidentiary ruling was error when the evidence was subsequently admitted. Contrary to plaintiff's contention, even if the trial court's reservation were error, such error would be harmless. The jury heard and read the package insert and was present when defense witnesses were cross-examined with the insert and the PDR. Since the information was presented to the jury, no reversible error was committed by the trial court.

## IMPEACHMENT OF EXPERT

■ Plaintiff contends the trial court erred in allowing repeated impeachment of its expert on immaterial matters. The scope of cross-examination of a witness is within the sound discretion of the trial court. (*Eckley v. St. Therese Hospital* (1978), 62 Ill. App. 3d 299, 379 N.E.2d 306.) Great latitude is allowed in the cross-examination of a witness to test his accuracy, recollection and credibility. (*Davidson v. Meier* (1978), 60 Ill. App. 3d 386, 376 N.E.2d 799.) Any alleged error in the admission of evidence designed to impeach a witness is not reversible error where no prejudice has resulted (*Chloupek v. Jordan* (1977), 49 Ill. App. 3d 809, 364 N.E.2d 650), and a court of review will not presume that prejudice exists. (*Atz v. Goss* (1974), 21 Ill. App. 3d 878, 316 N.E.2d 29.) The fact that an expert witness is impeached during cross-examination is not prejudicial. *Becker v. Aquaslide 'N' Dive Corp.* (1975), 35 Ill. App. 3d 479, 341 N.E.2d 369.

Applying these principles to the instant case, no reversible error is raised by plaintiff. At trial, Frost answered affirmatively that he knew what the standards of care were for administering and monitoring drugs "here" in 1978. In his deposition, however, Frost stated he was not familiar with the standards in the area in 1978 "because I wasn't in this area in 1978." Since these answers are inconsistent, they affect his credibility and thus, impeachment on this ground was proper.

Both defendants and their experts agreed that plaintiff was gravely ill with findings consistent with widespread infection and septic shock in the emergency room on December 10, 1978. They further agreed that broad spectrum antibiotic treatment was necessary because of clinical findings of sepsis and shock. Since defendants testified they gave plaintiff gentamicin based on her condition, Frost was

properly asked if plaintiff was in shock. While at trial his answer was equivocal as to whether plaintiff was in shock, in his deposition Frost was more certain, stating plaintiff was in shock. The two answers are arguably impeaching, and thus, no error was committed. Both defendant doctors stressed the importance of physician judgment in treating plaintiff's illness. Therefore, Frost was properly impeached on the issue of whether he could form an opinion as to the care rendered without being present during plaintiff's treatment. At trial, Frost answered he could reach an opinion concerning treatment solely from the record, but in his deposition stated "it's rather hard when you are not there to know the circumstances ***." While in his deposition he nevertheless stated he had formed an opinion based upon his review of the hospital record, his deposition testimony affected his credibility and the weight to be accorded his answer and thus was properly recounted by defense counsel.

Frost also gave two opposite opinions as to whether plaintiff was a "sick lady". following the discontinuation of the first course of gentamicin. Both defendant doctors and their experts testified plaintiff was gravely ill and exhibited symptoms of recurring sepsis. Plaintiff's condition, therefore, was material to the decision to again give gentamicin and thus, Frost's inconsistent answers were properly raised by defense counsel.

Both defendant doctors and their experts testified that the evidence of infection warranted the continuation of gentamicin until the course was finished on the eighth day post-operatively. Therefore, Frost was asked the question whether continuation of gentamicin until the positive identity came back on the culture was good medical practice. Frost stated it was not good medical practice and that he would not have continued gentamicin that long. In his deposition testimony, however, Frost responded he might have continued the gentamicin, depending upon the condition of the patient. The disparity in his answers provided a proper ground for impeachment. Since all of the instances of impeachment concern material issues and were directed toward Frost's qualifications or credibility, the trial court committed no reversible error.

### DIRECTED VERDICT FOR HOSPITAL

Plaintiff contends the trial court erred in granting the hospital's motion for a directed verdict. A court may direct a verdict when, at the close of all the evidence, the court has determined that even in the light most favorable to the nonmoving party, the evidence could not justify a contrary result. (*Pedrick v. Peoria & Eastern R.R. Co.*

(1967), 37 Ill. 2d 494, 510.) The reviewing court must determine whether the evidence could ever support an opposite verdict. (*Eckley v. St. Therese Hospital* (1978), 62 Ill. App. 3d 299, 304, 379 N.E.2d 306, 310.) A court properly directs a verdict when the opposing party has failed to produce some required element of proof in support of its cause of action. *Alton v. Kitt* (1982), 103 Ill. App. 3d 387, 431 N.E.2d 417.

Application of the *Pedrick* standard to medical malpractice cases requires the reviewing court to scrutinize the evidence submitted by the plaintiff in support of its case. (*McMillen v. Carlinville Area Hospital* (1983), 114 Ill. App. 3d 732, 737, 450 N.E.2d 5, 9.) In such cases, the plaintiff must establish the standard of care the hospital was required to meet, demonstrate a deviation from that standard, and indicate how the deviation resulted in harm to the plaintiff. *Casbarra v. St. James Hospital* (1979), 85 Ill. App. 3d 32, 36, 406 N.E.2d 544, 548.

Plaintiff asserts that the hospital's standard of care was established by the introduction into evidence of the standards of the Joint Commission on Accreditation of Hospitals (Joint Commission standards), the package insert on gentamicin and the PDR. The parties agreed at trial that the PDR and the package insert were the same. The hospital responds that the trial court properly directed the verdict because plaintiff failed to establish a standard of care by expert testimony. Plaintiff replies that expert testimony is not mandatory in this case.

■ While plaintiff states that the Joint Commission standards establish a standard of care, she fails to cite any particular standard or to refer us to a place in the record where specific standards were argued to the trial court. Plaintiff cites the testimony of the hospital's pharmacist that Condell Hospital complied with the Joint Commission standards and argues that the standards are independent evidence of a hospital's standard of care, but she does not refer to any specific standard upon which she bases her contention. Instead, she simply includes the entire 1977 Accreditation Manual of Hospitals in the appellate record and makes only generalized conclusions that the manual establishes the standard of care. Supreme Court Rule 341(e)(7) requires an appellant's brief to contain argument with "citation of the authorities and the pages in the record relied on." (87 Ill. 2d R. 341(e)(7).) Strict adherence to the standard is necessary to expedite and facilitate the administration of justice. (*Harvey v. Carponelli* (1983), 117 Ill. App. 3d 448, 453 N.E.2d 820.) This court is not obligated to search the record for evidence supporting reversal of the

trial court. (*Farwell Construction Co. v. Ticktin* (1980), 84 Ill. App. 3d 791, 802, 405 N.E.2d 1051, 1060.) Failure to comply with Supreme Court Rule 341(e) can operate as a waiver or can warrant dismissal of the appeal (87 Ill. 2d R. 341(e)(7)), and unless reference is made to those portions of the record supporting reversal, the argument will not be considered. (*Farwell Construction Co. v. Ticktin* (1980), 84 Ill. App. 3d 791.) In light of the absence of citation to either specific standards or pertinent portions of the record disclosing those standards, we conclude plaintiff has waived her reliance on the standards as evidence of the hospital's standard of care.

Apart from the Joint Commission standards, plaintiff relied upon the PDR and the package insert as establishing the hospital's standard of care. The general rule is that the standard of care must be established by expert testimony. (*Biundo v. Christ Community Hospital* (1982), 104 Ill. App. 3d 670, 673-74, 432 N.E.2d 1293, 1296.) An exception to the requirement is that the standard of care need not be established by expert testimony when the asserted breach of duty is of common knowledge or constitutes gross negligence. See *Holcomb v. Magee* (1920), 217 Ill. App. 272 (X-ray burns); *Piper v. Epstein* (1945), 326 Ill. App. 400, 62 N.E.2d 139 (sponges left in abdomen after surgery); *Newman v. Spellberg* (1968), 91 Ill. App. 2d 310, 234 N.E.2d 152 (injuries resulting from gastroscopic examination).

█ Plaintiff offered no expert testimony on the standard of care of the hospital. Rather, she contends that the record contains sufficient independent evidence of the negligence of the hospital (the PDR and the package insert). If in advancing this argument plaintiff contends that no expert testimony is required because the interaction of the two drugs is within every person's common knowledge, then we find her position untenable. In a complex situation such as is present here, involving the pharmacological effects of a drug regimen, a layperson cannot be expected to determine without the aid of expert testimony what standard should be used to judge the hospital's conduct. This case is not a situation where conduct is so grossly negligent "that a layman could readily appraise it, in which event expert testimony may not be necessary." *Casbarra v. St. James Hospital* (1980), 85 Ill. App. 3d 32, 36, 406 N.E.2d 544, 549.

Neither do we agree that her reliance on the PDR and the package insert is sufficient to establish the standard in the absence of expert testimony. While we agree that "the standard of care applicable to a hospital may be proved via a number of evidentiary sources" (*Greenberg v. Michael Reese Hospital* (1980), 83 Ill. 2d 282, 294), plaintiff has not cited nor can we find any case where a package in-

sert and a passage from the PDR alone established a hospital's standard of care. Plaintiff's reliance on *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 332, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204, for the proposition that Joint Commission standards are independent evidence of a standard of care is not persuasive, because plaintiff here has waived any reliance on the Joint Commission standards to establish Condell Hospital's standard of care.

Plaintiff also relies on two Federal cases to support her contention that the evidence established the hospital's standard of care. In *Monk v. Doctors Hospital* (D.C. Cir. 1968), 403 F.2d 580, the patient suffered burns after receiving treatment to remove moles from her body. Plaintiff sued the hospital and the doctor for negligence, relying in large part upon the instruction manuals published by the manufacturer of the burn machine to establish the hospital's standard of care. The *Monk* court held that while the manuals were not conclusive of the proper standard of care, they were relevant and admissible to guide the jury. Despite its statement "expert testimony is not always an evidentiary prerequisite for establishing the standard of care and the locality," *Monk* does not require the conclusion that the trial court here erred. The *Monk* court stated the manuals were not conclusive evidence. Likewise, the PDR and package insert while relevant are insufficient to establish a *prima facie* case of Condell Hospital's standard of care.

The decision in *Lucy Webb Hayes National Training School v. Perotti* (D.C. Cir. 1969), 419 F.2d 704, is also distinguishable from the instant case. There, the psychiatric patient died after jumping from a hospital window. In *dictum*, the court stated that the jury could have concluded even without expert testimony that the hospital acted negligently. Because the hospital had set its own rules restricting the movement of patients like the plaintiff, the *Lucy Webb* court reasoned, the jury "could reasonably conclude that the hospital's failure to observe the standards it had itself established represented negligence." (419 F.2d 704, 710.) The plaintiff in *Lucy Webb* introduced into evidence the specific hospital procedure requiring a staff member to accompany a closed-section patient when the patient went anywhere in the hospital. Here, in contrast, plaintiff did not cite a specific Joint Commission standard forming the basis of the hospital's standard of care. Thus, *Lucy Webb* is distinguishable.

Even if the evidence did establish the hospital's standard of care, plaintiff failed to prove that the hospital breached that standard. Plaintiff's argument appears to be that the failure of the hospital

pharmacy to inform the attending physician concerning the potential adverse interaction between Lasix and gentamicin was a sufficient deviation from the Joint Commission standards to submit the issue of the hospital's negligence to the jury. Since plaintiff has waived her reliance on the Joint Commission standards, her only bases for establishing a breach of a standard of care are the PDR and the package insert. As noted by plaintiff, the PDR and the insert contain warnings issued by the manufacturers of the drug products to the medical profession concerning the concurrent use of gentamicin and a potent diuretic. While these sources may provide relevant evidence of a standard of care or its breach, such evidence alone is too general to establish even a *prima facie* case of Condell Hospital's breach of a standard of care.

■ Even considering plaintiff's evidence regarding the Joint Commission standards, no breach of care was established. Plaintiff does not refer to any specific Joint Commission standard or recommendation. The record discloses that the hospital pharmacist testified that Condell Hospital in 1978 complied with the provisions of the Joint Commission on Accreditation of Hospitals, and that the hospital maintained a drug monitoring service in which a registered pharmacist reviewed and judged the drug therapy of each patient. The pharmacist also testified a hospital pharmacist would discuss a particular drug with the physician if it were inappropriate. The pharmacist further stated plaintiff's drug regimen was reviewed with regard to interactions, interferences, and incompatibilities. Plaintiff did not offer any evidence that lack of communication between the pharmacist and the physician here was a deviation from a standard of care. Plaintiff did not establish that Condell Hospital's drug monitoring program was deficient. Plaintiff did not cite to any evidence establishing that plaintiff's drug regimen was inappropriate. The potential adverse interaction of two drugs highlighted in the PDR does not establish a *prima facie* case that under the facts presented here gentamicin was inappropriately given and that Condell Hospital breached a standard of care. Therefore, the trial court properly directed a verdict in favor of the hospital.

### EXPERT TESTIMONY SUMMARIZING
### HISTORY AND CONTENT OF MEDICAL LITERATURE

■ Plaintiff's final argument is that the trial court erred in refusing to allow her expert to testify as to the history and content of medical literature regarding gentamicin and Lasix. At trial, plaintiff's only expert witness was Frost. During direct examination of Frost,

plaintiff asked him to review the literature on the history of gentamicin from 1964 "particularly with emphasis on its ototoxicity and interaction with Lasix." In answering plaintiff's question, Frost began reading from notes he had taken on his review of the literature. One defendant objected, arguing Frost's summary of the articles constituted hearsay. If plaintiff were allowed to present testimony concerning the contents of the articles, defendant contended, the jury would hear evidence which defendants would be unable to challenge on cross-examination. Plaintiff made an offer of proof, wherein Frost stated his notes summarized articles written by well-recognized authorities, his opinion of the standard of care was based upon the notes, and his testimony, if allowed, would parallel his notes. The trial court refused to allow Frost to read from his notes even though plaintiff stated she did not desire to have the notes admitted into evidence. The court agreed "that Frost was not precluded from stating his opinion and the authorities forming the basis of the opinion," but was prohibited from reading from his notes or from the articles themselves.

While this precise issue has not been decided by an Illinois court, several supreme court decisions have considered similar questions. In *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204, the defendant hospital argued the trial court erred in allowing cross-examination of its witnesses based upon the views of recognized authorities because the witnesses had not relied upon the same authorities in their direct testimony. Reversing its prior rule, the supreme court in *Darling* allowed such cross-examination, stating that "expert testimony will be a more effective tool in the attainment of justice if cross-examination is permitted as to the views of recognized authorities, expressed in treatises or periodicals written for professional colleagues." 33 Ill. 2d 326, 336.

In *Lawson v. G.D. Searle & Co.* (1976), 64 Ill. 2d 543, 557, the court held that the defense witness properly was allowed to base his conclusion on "published clinical studies." On direct examination, the witness grounded his opinion on "a detailed study of all the clinical studies that have been published in the literature ***." The *Lawson* court refused to characterize the testimony as hearsay, noting the witness was extensively cross-examined as to his opinion based upon the literature. The court specifically noted, however, that the witness did not mention the reports by name and did not "recite the empirical data drawn from the reports or the conclusions of the researchers." (64 Ill. 2d 543, 557.) These qualifications distinguish *Lawson* from the

instant case. Here, by summarizing the findings of the studies in the medical literature, plaintiff was attempting to recite the data and conclusions of those articles.

The more recent case of *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, supports defendant's position on appeal. In *Walski*, the experts of both the plaintiff and the defendant were cross-examined on the basis of treatises, but the plaintiff argued that the treatise used to cross-examine the defendant doctor established the requisite standard of care and should have been admitted as substantive evidence. Rejecting the plaintiff's contention, the *Walski* court stated:

> "Such is not the law in this jurisdiction at this time, and it is unnecessary for us to decide now whether and under what circumstances a plaintiff may introduce medical treatises as substantive evidence; plaintiff has made no attempt to introduce the treatises used to cross-examine Dr. Tiesenga as substantive evidence." (72 Ill. 2d 249, 258-59.)

This statement by the *Walski* court suggests that the articles cannot be used as substantive evidence here to establish defendant's standard of care. See *Plost v. Lewis A. Weiss Memorial Hospital* (1978), 62 Ill. App. 3d 253, 259, 378 N.E.2d 1176, 1180 (scientific works generally not admissible in Illinois as direct evidence).

Plaintiff argues the supreme court's adoption of Federal Rules of Evidence 703 and 705 in *Wilson v. Clark* (1981), 84 Ill. 2d 186, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140, requires reversal of the trial court's ruling. Because hospital records are highly reliable, the *Wilson* court held that an expert even though not the treating physician may give his response to a hypothetical question based on facts contained in hospital records not introduced into evidence. In reaching its conclusion, the *Wilson* court relied upon its earlier decision, *People v. Ward* (1975), 61 Ill. 2d 559, where it held that medical records could be used by the treating doctor in forming an opinion as to the accused's sanity even though the reports were not introduced as evidence.

Several recent decisions have interpreted *Ward*. In *People v. Rhoades* (1979), 73 Ill. App. 3d 288, 391 N.E.2d 512, the court expressly concluded that a psychiatric expert could testify not only that he relied upon medical records in forming his opinion, but also could testify as to the contents of those records. (See also *People v. Castro* (1983), 113 Ill. App. 3d 265, 446 N.E.2d 1267; *Kinsey v. Kolber* (1982), 103 Ill. App. 3d 933, 431 N.E.2d 1316; *In re Germich* (1981), 103 Ill. App. 3d 626, 431 N.E.2d 1092.) In *In re Smilley* (1977), 54 Ill. App. 3d 31, 369 N.E.2d 315, however, the court distinguished *Ward*

and concluded that since the testifying doctor had not supervised the psychiatric intake report, he could not testify based upon the report. The court in *Bailey v. City of Chicago* (1983), 116 Ill. App. 3d 862, 452 N.E.2d 680, also discussed *Ward*. There, the plaintiff sued the city of Chicago for personal injuries. In cross-examination, the city sought to establish that the plaintiff had been involved with a minor girl and had beaten his father. On appeal, the city argued the incidents were established by a defense witness' reference to the notations in the plaintiff's hospital records. The records were not introduced into evidence and the physician to whom the statement was made did not testify. Citing *Wilson v. Clark* (1981), 84 Ill. 2d 186, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140, the defendants argued "the witness could rely on the notation in the record as substantive evidence that the incident occurred." Rejecting this argument, the *Bailey* court noted both that *Wilson* involved the testimony of experts based upon medical records, not the introduction of the records themselves, and that the medical records compiled by a nontestifying individual remained inadmissible hearsay on direct examination. Therefore, the *Bailey* court concluded the trial court improperly allowed as direct evidence that the incidents occurred reference to the remarks in the hospital records concerning the incident.

Similarly, plaintiff here is attempting to introduce the facts in the articles as substantive evidence on direct testimony regarding gentamicin and Lasix. While prior decisions make clear that Frost could base his opinion on the articles and could recite the articles as sources for his opinion, *Bailey* supports our conclusion that the trial court properly rejected Frost's summarization of the findings of the articles.

Also supportive of the defendants' position are *Fornoff v. Parke-Davis & Co.* (1982), 105 Ill. App. 3d 681, 434 N.E.2d 793, and *Mehochko v. Gold Seal Co.* (1966), 66 Ill. App. 2d 54, 213 N.E.2d 581. In *Fornoff*, the plaintiff sought to introduce certain medical treatises as substantive evidence. In affirming the trial court's refusal to allow introduction of the treatises, the *Fornoff* court stated: "An expert witness may always state the basis for his opinion; however, admission of authoritative treatises are [*sic*] only for the purpose of impeaching that expert. The rule prohibiting introduction of medical treatises as substantive evidence is one of long-standing." (*Fornoff v. Parke-Davis & Co.* (1982), 105 Ill. App. 3d 681, 690-91.) Plaintiff seeks to distinguish *Fornoff* on the basis that there, the actual treatise was sought to be introduced, while here, Frost only sought to introduce the articles as supportive evidence. Her distinction is unpersuasive. Just as the

author of the treatise in *Fornoff* was unavailable for cross-examination, the authors of the articles summarized by Frost were also unavailable for cross-examination.

In *Mehochko v. Gold Seal Co.* (1966), 66 Ill. App. 2d 54, 213 N.E.2d 581, the appellate court reversed the trial court's ruling allowing the defendant's expert witness in a products liability action to read the results of tests conducted on the product by an independent laboratory. Concluding the testimony was inadmissible hearsay, the *Mehochko* court stated:

> "In tests, the essential elements are the results, methods and qualifications of the tester. The method and qualification of the tester (to conduct the test and correctly read its results) give the results their veracity. Dr. Lederer was not testifying from his own knowledge about an exhibit (like the X-ray or myelogram) before the court. He could not be cross-examined about an exhibit before the court. He was not testifying from his own knowledge about an exhibit before the court; he knew no more about the independent tests than he had read (been told). The tests were not before the court and he could not be cross-examined about the method (save what he read about it) nor about the tester's qualifications to perform the experiments and correctly interpret the results. Dr. Lederer was a stranger to the evidence he introduced. He knew nothing about it save through hearsay; he could not be cross-examined about the essence of the independent tests." (*Mehochko v. Gold Seal Co.* (1966), 66 Ill. App. 2d 54, 58, 213 N.E.2d 581, 583.)

Just as did the witness in *Mehochko*, Frost here was attempting to summarize the results of the tests that he had not conducted and about which he could not testify on cross-examination concerning the test methods and procedures. Plaintiff's arguments that *Mehochko* is "inapposite" are unpersuasive. We do not read *Wilson* as overruling *Mehochko* as does plaintiff. In *Wilson*, the court allowed prospectively a nontreating physician to offer his opinion in response to a hypothetical question based upon records not introduced into evidence. Here, and in *Mehochko*, the experts were not just offering their opinion, but in addition were attempting to summarize tests and studies performed by others. Another distinguishing factor between *Mehochko* and the instant case on the one hand and *Wilson* on the other is that the tests in the former cases are significantly less reliable than are hospital records. Finally, in *Wilson*, the expert witness was answering a hypothetical question based upon facts contained in the plaintiff's hospital chart. Therefore, those facts were directly pertinent to that litigation.

In contrast, the disputed testimony in *Mehochko* did not concern the plaintiff's injuries directly, but rather only experiments on the product conducted under potentially different conditions. Likewise, Frost's testimony which was excluded by the trial court here did not directly concern plaintiff's treatment, but rather summarized tests some of which occurred many years prior to plaintiff's injuries and none of which replicated her unique circumstances. For these reasons, we find *Mehochko* persuasive and conclude the trial court properly prevented Frost from summarizing the medical literature.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

HOPF and NASH, JJ., concur.